## C. P. Robb v. Savings Bank of Louisville.

[Abstract Kentucky Law Reporter, Vol. 6—215.]

**Agency of Bank Cashier.**
> Where one makes deposits at a bank dealing with the cashier and the cashier makes investments with the money thus deposited and the bank presents settlement sheets with the depositor, the dealing is with the bank and not with the individual cashier and the bank having received the deposits must account for them and can not say that the action of its cashier was ultra vires and that it is not liable on account of the investments. The bank by its officers must be presumed to have known and approved the actions of its cashier and is bound by them.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

September 25, 1884.

OPINION BY JUDGE PRYOR:

The Savings Bank of Louisville being unable to meet its liabilities made an assignment of all its assets to Stephen E. Jones for the benefit of creditors. The appellant, C. P. Robb, instituted an action at law in the Jefferson Court of Common Pleas against the bank and its assignee in which he seeks to recover the amount of various deposits made by him with the bank aggregating in amount about the sum of $37,000. After deducting the credits to which the bank is entitled he claims a balance of $30,445. It is alleged in his petition that in April, 1874, he entered into an agreement with the bank by which the bank undertook to invest the deposits in good securities and collect the interests and profits, averring that the bank did make the investments, but had failed to account to him for the same in any manner but had converted the whole amount to its use. The bank and its assignee filed answers denying the liability of the bank by pleading payment of the deposits made or accounting for the same to Robb except the sum of $2,942.

The answer of the assignee was made a cross-petition praying for a settlement of his accounts, and the entire case was transferred to the equity docket and there disposed of. Robb's account with the bank on the books of the bank shows that the bank had

accounted to the appellee for all of his deposits as set forth in the answer of the bank and its assignee.

The account of Robb with the bank as made out by the cashier, Rhorer, and delivered to appellant is as follows:

A. C. B. 2 is headed

> *"Account of C. P. Robb in Sav. Bk. Lou."*

A. C. B. 3 is headed

> *"Interest Statement on Within Account to Date."*

A. C. B. 4 is headed

> *"Statement of Chas. P. Robb's Acct. Oct. 17, 1877."*

*Deposits.*

| | | |
|---|---:|---:|
| 1873, Oct. 9, ck. on N. Y. | $20,000.00 | |
| 1874, May 26, ck. on N. Y. | 900.00 | |
| 1874, Oct. 17, ck. on N. Y. | 700.00 | |
| 1875, April 4, ck. on N. Y. | 4,000.00 | |
| 1876, Jan. 28, Thompson | 516.58 | |
| 1877, Feb. 2, Whipp on account | 309.00— | $26,425.58 |
| Interest to Oct., 1875 (statement rendered) | $1,923.00 | |
| " on $6,000 loaned June 19, 1876 | 600.00 | |
| " on $2,000 loaned June 25, 1876 | 200.00 | |
| " on $2,000 loaned June 29, 1876 | 200.00 | |
| " on $4,000 loaned Oct. 15, 1876 | 400.00 | |
| " on $8,000 loaned July 15, 1876 | 720.00 | |
| " on 2 yrs. coupons on cement bonds | 640.00 | |
| " on $10,000 loaned August. 1877 | 900.00 | |
| " on $8,000 loaned Aug. 5, 1877 | 640.00— | $6,220.00 |
| | | $32,645.58 |
| Checks rendered in acct. of Oct. 5, 1875 | $985.00 | |
| " Nov. 19, 1875, cash | 150.00 | |
| " Nov. 17, Dr. Cummins | 150.00 | |
| " Dec. 15, Dutton's medicine | 6.00 | |
| " Aug. 21, ck. on N. Y. | 1,000.00 | |
| " Nov. 21 | 400.00 | |
| " Feb. 2, 1877, atty. Whipps case | 50.00 | |
| " May 25, N. Y. ck. | 200.00 | |
| " Oct. 11, cash | 50.00— | $2,991.00 |
| Balance Oct. 17, 1877 | | $29,654.58 |

Statement of loans for C. P. Robb:

| | | |
|---|---|---|
| A. 10. | Loan of $6.000 made June 19, 1874. | Paid and released in H. |
| B. 10. | Loan of $2,000 made June 24, 1874. | |
| C. 10. | Loan of $2,000 made June 29, 1874. | Paid and released in I. |
| D. 10. | Loan of $4,000 made Oct. 15. | |
| E. 9. | Loan of $8,000 made Dec. 1. | Reloaned in F. |
| F. 9. | Loan of $8,000 made July 15. | Paid at end of six months. |
| G. 8. | Loan of $8,000 made Aug. 5. | |
| H. 8. | Loan of $10,000 made Aug. 1. | Repaid at end of year and reloaned in G. |
| I. 8. | Loan of $4,000 made Nov. 1. | |
| K. | Loan of $4,000, 4 cement bonds, int. paid to August, 1877. | |

It is denied, however, by the appellee, the bank, that the account presented by its cashier, Rhorer, to the appellant, Robb, was a correct account as appeared from the books of the bank and that the account as therein kept by its cashier was as follows:

*Amount Deposited by Robb.*

| | |
|---|---|
| 1873, Oct. 9, cash | $20,000.00 |
| 1874, April 28, canceled call | 7,900.00 |
| 1874, May 26, N. Y. draft | 900.00 |
| 1874, June 26, interest | 1,000.00 |
| 1874, Oct. 17, N. Y. draft | 100.00 |
| 1875, Oct. 5, cement coupons | 160.00 |
| 1875, Nov. 5, Whipp's suit | 1,000.00 |
| 1875, Dec. 15, 4 cement bonds | 4,120.00 |
| 1876, Jan. 28, Thompson's | 516.58 |
| 1877, Feb. 2, Whipp's suit | 250.00 |
| 1877, March 6, cement dividend | 309.00 |
| 1877, March 18, cement dividend | 357.50 |
| 1877, March 18, cement dividend | 257.50 |
| | $37,370.58 |

*Debit Account of Robb.*

| | |
|---|---|
| 1874, April 25 | $7,900.00 |
| 1874, May 26 | 6,000.00 |
| 1874, June 19 | 100.00 |
| 1874, June 25 | 2,000.00 |

| | |
|---|---:|
| 1874, June 29 _____ | 2,000.00 |
| 1874, Aug. 21 _____ | 100.00 |
| 1874, Sept. 25 _____ | 100.00 |
| 1874, Nov. 5 _____ | 200.00 |
| 1874, Nov. 6 _____ | 2,564.58 |
| 1875, Jan. 5 _____ | 5.00 |
| 1875, April 8 _____ | 5.00 |
| 1875, Oct. 14 _____ | 575.00 |
| 1875, Oct. 14 _____ | 200.00 |
| 1875, Nov. 19 _____ | 150.00 |
| 1875, Nov. 22 _____ | 6.00 |
| 1875, Dec. 16 _____ | 4,120.00 |
| 1875, Dec. 28 _____ | 1,000.00 |
| 1875, Dec. 30 _____ | 150.00 |
| 1876, June 26 _____ | 2,000.00 |
| 1876, June 29 _____ | 2,000.00 |
| 1876, Aug. 26 _____ | 1,000.00 |
| 1876, Nov. 21 _____ | 400.00 |
| 1877, Feb. 2 _____ | 50.00 |
| 1877, Aug. 8 _____ | 200.00 |
| 1877, Oct. 11 _____ | 50.00 |
| 1878, May 7 _____ | 250.00 |
| 1878, May 17 _____ | .60 |
| 1878, July 5 _____ | 150.00 |
| 1878, Oct. 22 _____ | 250.00 |
| 1878, Dec. 21 _____ | 500.00 |
| 1879, Feb. 17 _____ | . 2.40 |
| 1879, Oct. 1 _____ | 400.00 |

$34,428.58

It appears, therefore, from the facts of the record that the books of the bank failed to show all the investments made by Rhorer and that his accounts purporting to come from the books of the corporation and presented by him to Robb were false and fraudulent. The books of the bank do show, as is conceded from the answer of the assignee, the large amount of money deposited by the appellant with the bank, the debit account showing a payment to Robb from time to time of $34,428.58, a sum within $2,942 of the amount deposited by Robb. This the bank claims is the

amount due Robb, and that this large sum of money was invested by Rhorer, its cashier, for Robb and without the knowledge or consent of the officers of the bank. This Robb denies, claiming he never made any arrangement with Rhorer individually or gave checks for the amounts, but that all his dealings were with the bank through Rhorer, its cashier, and in no other manner.

The failure of the bank to pay its depositors resulted from the official misconduct of its cashier, Rhorer, whose deposition was taken by the bank and relied on for the purpose of showing payment to the appellant. The testimony of Rhorer failing to show any payment made by the bank except such payments as had been admitted by the appellant, the bank, on the 13th day of June, 1881, after taking Rhorer's deposition by leave of the court filed an amended answer to conform to the proof, in which it is alleged that "on the 9th of April, 1874, the plaintiff, Charles P. Robb, requested of J. H. Rhorer, then the cashier of the defendant (the bank) to invest and keep invested for him (the plaintiff) all of said money then deposited and thereafter to be deposited with the defendant. Said Rhorer agreed with said plaintiff to make the investment of plaintiff's money, and to account to plaintiff for the proceeds thereof; said agreement to invest and account for the proceeds was the individual agreement by Rhorer and not the agreement of the bank."

That the existence of the agreement was unknown to the defendant until after the assignment to Jones in January, 1880, and that neither the bank nor Jones had ever received the money or the securities, or made any profits therein in any way; that none of the securities ever came into the custody of the bank, but that the care and control of the securities was a private matter between Rhorer and the plaintiff. This in substance is the statement contained in the amended answer. The appellant in his rejoinder admits that he told Rhorer, as the executive officer of the bank, and while in the bank during business hours, that if any good paper was offered and the bank did not want it, it might be taken on his account provided it was good beyond a doubt; that he would rather permit his money to remain idle in the bank than to take any risk on loans. He insists that he was authorizing the bank through Rhorer, its cashier, to invest his money and control the funds. The conversa-

tion in regard to the investments took place on the 9th of April, 1874.

It appears from the undisputed facts of this case that prior to the 9th of April, 1874, when this alleged conversation took place, that the appellant (Robb) had loaned to the bank $20,000.00 on interest at the rate of 10% per annum; that the negotiation for the loan had been made by the cashier, Rhorer, on the 9th of October, 1873, and the money deposited in the bank to the credit of the appellant; this loan continued until the 9th of April, 1874, when it was terminated by a notice from the cashier to Robb that the bank would pay the interest no longer, so on this last named day the appellant, the interest being $1,000, had deposited to his credit in this bank the sum of $21,000. After this the bank made other collections for him, or he made deposits in the bank increasing his credit account largely in excess of the $21,000.

It is manifest from the pleadings and the proof, and certainly from the proof that these deposits were made with the bank, and the burden was on the appellee of showing that this money had been withdrawn by the appellant or by some one acting under his authority. Rhorer, the cashier, says it was a private arrangement with himself and the appellant and the bank was no party to the transaction. The appellant states that he made the request of Rhorer to make the investments as cashier and in no other manner and that he called for his bank account several times and the cashier took from the books of the bank the itemized statement already referred to and handed it to him as the evidence of his transactions with the bank, and in our opinion Rhorer, the cashier, either understood that he was acting for the bank, or was deceiving the appellant by the presentation of an account that purported to be with the bank when it was not. The appellant had been transacting business with this bank and its predecessor for nearly twenty years, and so far as this record shows, Rhorer being the cashier in both institutions had never entered into any private or individual contract with the appellant in reference to any business transaction, and it is plain that Robb regarded the arrangement with reference to his money as having been made with the bank through its cashier, and the cashier's subsequent conduct indicates clearly that he regarded it in the same light. It is apparent from the facts before us that Rhorer was not only the cashier but that

he was the general manager of the bank and such was the confidence reposed in him by the directors, stockholders and the appellant that his statement with reference to a business transaction was considered as conclusive, and not properly the subject of an investigation.

This confidence seems to have been misplaced, and the burden of the loss in a controversy between the bank and its depositor in a case like this must fall on the bank unless there is some plain reason for making those who have been induced to deal with the institution responsible for their own want of diligence. The bank maintains in this case, first, that the appellant looked to the individual responsibility of Rhorer by making him his special agent for investing his money, and not to the credit of the bank, and, secondly, that if the appellant undertook to deal with Rhorer as cashier and as such authorized him to make investments, it was not within the exercise of its corporate power and therefore no liability attached.

We scarcely deem it necessary in considering this record to discuss the extent of the power conferred upon the cashier, or the right of this banking institution to undertake to make investments of the money of depositors in stock and other securities.

It is certain that this money was deposited in the savings bank by Robb and that it was placed to his credit on the books of the institution. The bank stood debtor as appeared from its own account spread upon its own books to Robb for this large sum of money and the only reason it assigns for avoiding its responsibility is that its own cashier, under some arrangement with the appellant, has taken his money from the bank and converted it to his own use. It is not pretended that these securities or loans made, or the evidence of either, were ever delivered to the appellant or that the bank has accounted to him in any way. What has become of the securities, or to whom the money was loaned does not appear and the only evidence of any investment except as to the cement bonds is the account of Robb. It is conceded that the deposit of money was made, but how it left the bank is involved in mystery. Robb never authorized Rhorer to check in his name for this large amount of money, and there is no check produced nor any evidence of Rhorer's right to check except the statement of Rhorer that he did check for the amount he intended to invest.

Neither the check nor the investment is produced and it is evident that when Rhorer did invest, if any such investments were made, that he placed his hands in the vault of the bank, withdrew the money without a check and charged these sums to Robb's account until Robb's deposit was exhausted. Checks have been produced signed "Robb by Rohrer," but these were for small sums and in every instance except one written authority was given Rhorer not to draw a check but to pay for the appellant or to send to the appellant a certain sum of money. Such letters protected the bank or Rhorer as against Robb for although not in the form of checks they were equivalent to an order to Rhorer to pay the money. These sums the appellant concedes to be right as he had directed Rhorer to pay the money, and the reason that the checks of Rhorer on account of these large transactions are not produced is that he never gave a check but simply exhausted Robb's deposits by withdrawing the money from the bank and charging it to Robb's account as money loaned. It was simply a conversion of the bank's money by the cashier to his own use. It is urged, however, by the bank that the account was presented by Rhorer to Robb showing the investments made and that as no complaint was offered the act of Rhorer was sanctioned and confirmed by the appellant. This is undoubtedly true. The account presented purported to be his account in the savings bank. It is headed "Account of C. P. Robb in Savings Banks," and then proceeds to give the various items of credits and debits, the account showing the investment made and that his securities or the evidences of his right was with the bank. It was not an account with Rhorer, but an account with the bank purporting to come from books of the bank showing to the depositor the statements of his accounts and if improperly rendered by the cashier, he was deceiving the depositor as well as the bank, and using Robb's money as if expressly authorized by the president and directors of the institution.

The bank, by its officers, must be presumed to have known and to have approved the action of Rhorer, if the investments or loans were actually made as stated in Robb's account or if the money of Robb was disposed of as appears from the books of the bank, and in this light it may be proper to consider this case. It must be assumed that the appellant believed that he was dealing with the bank, first, because he so swears and, secondly, because the trans-

actions as they appear from the books of the bank show that
Rhorer considered himself as acting for the bank. The capital
stock of this bank did not exceed one hundred thousand dollars.
The bank had been borrowing money at 10 per cent. interest from
a depositor whose deposits in a short time exceeded one-third of
its entire capital stock. The directors knew or ought to have
known that these investments if made, had been made by the bank,
as the account of Robb on the Individual Ledger of the bank kept
from the year 1873 until the year 1877, a period of four years,
showed plainly the existence of these large transactions amount-
ing in all to a sum exceeding half of the capital stock.

The directors say that they knew nothing of this transaction
with Robb until after the failure of the bank, but will this protect
the bank as against one who had the right to trust the bank, and
who was induced to believe by the fraudulent conduct of its cashier
that his funds were in the bank and under its control. It was
not the mere declaration by the cashier to that effect, but the
exhibition of the books of the bank showing his statement to be
true and evidenced by an account with the bank that had been run-
ning for a period of four years, and longer. The bank will not
be allowed to say that its chief officers knew nothing of this ac-
count and having received appellant's money it must show that it
left the bank in some other way than on the verbal request of the
depositor to the cashier to make investments for him.

This is not a controversy between the officers of the bank and
the appellant for any neglect of duty on their part in supervising
the affairs of the bank. The appellant claims to be a creditor of
the bank and the bank takes issue on that question alone. The
books of the bank show the deposits and the debit account. The
debit account is false but the cashier says that the money was in-
vested; if so, the bank must account for the one or the other and
no such question as ultra vires or want of authority arises in
the case.

The bank shows that it had this appellant's money, if so, where
is it and to whom was it loaned, where is the investment? These
are questions easily answered and the doctrine of ultra vires con-
stitutes no response.

As a general rule while the office of cashier is purely execu-
tive, in the present case the cashier controlled and regulated all

the affairs of the bank, the directors and depositors having the utmost confidence in his personal and official integrity. We will not assume, however, nor is it necessary that the cashier has usurped the powers of the directors, but we must assume from facts patent upon the books of the bank that this was a transaction with the bank and therefore the appellant is entitled to the relief sought. This is not an issue between two innocent parties. The one had the right to trust and the other must be presumed to have known the character of the undertaking by the bank through its cashier with the appellant. If a bank should undertake to invest the money of its depositor it certainly must account for either the money deposited or the investment, and if it fails to do either a responsibility arises. There may have been no agreement to pay the bank for making the investment but the appellant says that when the account was presented he said to the cashier, "You have charged me nothing for making the investment," and Rohrer said it was an immaterial matter." If the money was invested, as the appellant had been a depositor or customer of the bank for so many years, the bank by its agent might well have declined to make any charge against him, but whether so or not the facts of the record it seems to us are conclusive against the bank. That a depositor may make the officer of a bank his special agent with reference to his deposits in such a manner as to release the bank is not doubted, but after the failure of a bank institution when the depositor calls for his money but little importance should be attached to the statement of the bank officer who has squandered its funds and then by his testimony attempts to make himself the special agent of the depositor, and particularly when that statement is in direct conflict with the books of the bank kept by himself.

In the case of the *Bank of Owensboro v. The Western Bank,* 13 Bush 526, it was insisted that Haster, the cashier, was the agent of the Owensboro Bank and for that reason the Western Bank was not liable for the acts of its cashier in reference to the loan. This court held otherwise, saying "that nothing in its charter prohibited the Western Bank from engaging in any business incident to general banking." It is true it was further held in that case that no such issues were made as to the authority of the cashier or the right of the bank to loan the money of its depositor,

but it seems to us it is clearly intimated in the opinion in that case that the loaning of money on deposit for a customer by the bank should be regarded as within the range of its legitimate business unless prohibited by its charter.

"The acts of a cashier of a bank are only binding on the bank when he acts within the sphere of his authority." This rule is fully recognized in this case, but when you come to apply it to the facts it has no application for the reasons already given. The appellant must stand as a creditor of the bank and share in the distribution of its assets.

There is some confusion in the statement of the accounts rendered and when the case returns to the court below the bank should be charged with the deposits made in the books of the bank to appellant's credit and the bank credited by the sums admitted in the pleadings to be correct and proven and any other sum or amount paid to appellant or any one else for his use.

The investments charged to appellant by Rhorer and which were not delivered must be disregarded in the settlement or accounted for by the bank in some other way than the wrongful disposition of them by its cashier. The balance found due appellant should bear interest from the institution of his action.

The judgment below is *reversed* and cause remanded for proceedings consistent with the opinion.

*William Lindsay, Harrison & McGrain, for appellant.*

*James Speed, Barnett & Noble, Thomas & John Speed, for appellee.*