WALTER L. BRYANT *versus* JONATHAN MOORE.

The limitation of the authority of a general agent may be public or private. If it be public, those who deal with him must regard it, or the principal will not be bound. If it be private, the principal will be bound, when the agent is acting within the scope of his authority, although he should violate his secret instructions.

A special agent may have a general authority, or it may be limited in a particular manner. If the limitation respecting the manner be public, or known to the person with whom he deals, the principal will not be bound, if the instructions are exceeded or violated. If such limitation be private, the agent may accomplish the object in violation of his instructions, and yet bind his principal by his acts.

If one person knows, that another has acted as his agent without authority, or has exceeded his authority as agent, and with such knowledge accepts money, property, or security, or avails himself of advantages derived from the act, he will be regarded as having ratified it. But this will not be the case, when the knowledge that the person has exceeded his authority is not received by the employer so early as to enable him, before a material change of circumstances, to repudiate the whole transaction without essential injury.

EXCEPTIONS from the Western District Court, GOODENOW J. presiding.

This was an action of assumpsit on a note of hand, dated March 30, 1844, given by the defendant to Peter H. McAllaster for fifteen dollars. The plaintiff to sustain his action read the note to the jury.

The defence to the note was a want of consideration and a breach of warranty. To maintain this defence the defendant proved that sometime prior to March 30, 1844, McAllaster exchanged a pair of oxen with the defendant, which were the property of the plaintiff, for a pair of steers, receiving the defendant's note for twelve dollars, as difference between the cattle. That on the same day McAllaster returned the steers to the defendant, together with the note, and said he did not consider it a trade, as said Bryant would not consent to so swap; and that Bryant had directed him to say to the defendant that the defendant must send him a note of fifteen dollars, or change back. Whereupon some conversation ensued in relation to a bunch then on the jaw of one of the oxen, and

McAllaster said that the bunch would not injure the ox, and that he would warrant the bunch never to injure or hurt the ox ; that the defendant then said, that if McAllaster would warrant the bunch not to injure the ox, he would give the fifteen dollar note; and thereupon the defendant gave the fifteen dollar note in suit, upon condition that McAllaster would warrant the bunch not to injure the ox, and the warranty was so made ; that the defendant worked the oxen some in the months of April, May and June following; that about the middle of said June, and prior to the commencement of this suit, the defendant told the plaintiff that McAllaster warranted the bunch not to injure or hurt the ox, and proposed to give the plaintiff three dollars and give up the trade, or refer the matter to three disinterested men ; that McAllaster was present and denied that he made the warranty aforesaid, and Bryant made no reply ; that the bunch became worse and the ox began to fail in said May, and continued to fail; that the ox was so injured by the bunch that in September following the said defendant killed him ; and the defendant suffered damage by reason of the bunch.

McAllaster did not make any warranty, when he first traded, nor was there any evidence, that he had at that time any authority from the plaintiff to make any trade whatever with the defendant.

Upon this evidence the counsel for the defendant insisted, that McAllaster was authorized by Bryant to make the warranty aforesaid, so as to make the said Bryant liable for said warranty ; and if not, the acts and doings of the plaintiff in putting the fifteen dollar note in suit was an adoption and ratification of the acts and doings of McAllaster in taking said note, and rendered the plaintiff liable for the warranty made as aforesaid.

The Court instructed the jury, that although under a general authority to sell or exchange, an agent might be enabled to make a warranty which would be binding on his principal, yet under the circumstances of this case, it was the opinion of the Court, that such an authority could not be reasonably inferred.

and that the receiving the note without knowledge of any such warranty was not an adoption or ratification of it; and that the suit on the note, after the defendant stated in June to the plaintiff that McAllaster made a warranty, and it was denied by McAllaster, was not an adoption or ratification of the warranty.

The verdict was for the plaintiff, and the counsel for the defendant filed exceptions to the opinions and rulings of the Court.

*Gerry* argued for the defendant — and

*Hammons,* for the plaintiff.

The opinion of the Court was drawn up by

SHEPLEY J. — This suit is upon a promissory note made by the defendant on March 30, 1844, and payable to Peter H. McAllaster or order. The bill of exceptions in substance states, that McAllaster on that day exchanged a pair of the plaintiff's oxen with the defendant for a pair of steers, and received of the defendant a note for twelve dollars for the estimated difference in value. That he returned the steers and note to the defendant on the same day, and informed him, that the plaintiff would not consent, that the exchange should be thus made, but directed him to say, that the " defendant must send him a note for fifteen dollars or change back." That they then spoke of a bunch on the jaw of one of the oxen, and defendant said, he would give the note for fifteen dollars, if McAllaster would warrant, that the ox would not be injured by the bunch, that McAllaster did so warrant, and thereupon the note in suit was made.

The question presented is, whether the plaintiff is bound by that warranty.

The authority of a general agent may be more or less extensive; and he may be more or less limited in his action within the scope of it. The limitation of his authority may be public or private. If it be public, those who deal with him must regard it, or the principal will not be bound. If it be private, the principal will be bound, when the agent is acting

within the scope of his authority, although he should violate his secret instructions.

A special agent is one employed for a particular purpose only. He also may have a general authority to accomplish that purpose, or be limited to do it in a particular manner. If the limitation respecting the manner of doing it be public or known to the person, with whom he deals, the principal will not be bound, if the instructions are exceeded or violated. If such limitation be private, the agent may accomplish the object in violation of his instructions, and yet bind his principal by his acts.

The case of a servant of a horse dealer, who on sale of a horse warranted him to be sound in violation of his instructions, and yet bound his principal, is an example of the kind of agency last named.

This case differs from it in this respect only, that the manner, in which he was to perform the particular act, was communicated to the defendant. But that makes an essential difference; for, in such case, the principal is not bound. After the first bargain the defendant was informed, that McAllaster had acted without authority, and of the terms, upon which the plaintiff would make the exchange; and he had no right to conclude, that McAllaster had any authority to vary them. There being no warranty in the first bargain, he could not be authorized to infer, that McAllaster might make one as a part of the second. On the contrary he should have been admonished, by what had taken place, that he had no general authority to make an exchange.

There is no doubt, that if one person knows, that another has acted as his agent without authority, or has exceeded his authority as agent, and with such knowledge accepts money, property, or security, or avails himself of advantages, derived from the act, he will be regarded as having ratified it. This will not be the case, when the knowledge, that the person has exceeded his authority is not received by the employer so early as to enable him, before a material change of circumstances, to repudiate the whole transaction without essential injury. If,

for instance, a merchant should authorize a broker by a written memorandum to purchase certain goods at a price named, and the broker should exhibit it to the seller, and yet should exceed the price, and this should be made known to the merchant, when he received the goods; if he should retain or sell them, he would ratify the bargain made by the broker, and be obliged to pay the agreed price. But if he had received the goods without knowledge, that they had been purchased at an advanced price, he would not be obliged to restore them, or pay such advanced price, if he could not, when informed of it, repudiate the bargain without suffering loss. In such case he would not be in fault. The seller would be, and he should bear the loss.

When the plaintiff in this case was first informed, that his agent had exceeded his authority, he had lost the services of the oxen for two months and a half; and the agent was present and denied, that he had made the warranty. The defendant appears to have been sensible, that the plaintiff would then suffer loss by a rescission of the contract, and to have offered compensation therefor. Whether the offer was a reasonable one or not, is immaterial, for the plaintiff under such circumstances was not obliged to rescind. He does not appear to have made any movement in the first instance to effect the exchange, or to have desired it, or to have been in fault, when first informed of the warranty. The defendant could not at that time prescribe the terms, upon which the contract should be rescinded, or insist upon it. *Exceptions overruled.*