JUDGE GOFER
delivered the opinion óp the court.
The appellant and appellee are both incorporated state banks, •doing a general banking business, the former in Owensboro, and the latter in Louisville.
July 17, 1872, the appellant had money on deposit with the appellee, and, on that day, by its cashier, W. K. Anderson,, wrote to Henry Hurter, appellee’s cashier, as follows:'“'We *530 would like to have you invest some means for us, if you can, in good paper at thirty, sixty, ninety, or one hundred and twenty days’ time.”
July 24, 1872, Hurter, in a letter signed “Henry Hurter, cashier,” wrote to appellant’s cashier that he had, on that day, loaned for appellant, to Robert Atwood, $5,000 on his note at ninety days, secured by seventy shares of Bank of Louisville stock, certificates for which, indorsed by Atwood, he then held, and would forward to appellant if desired. In the afternoon of the same day Hurter wrote a second letter in which he said, “I omitted to inquire in m’y letter of this morning whether you wish the collaterals transferred on the books of the Bank of Louisville to your name and certificates issued.” In reply to the first of these letters appellant wrote, acknowledging the receipt of Atwood’s note, and returning it for collection, and also that the investment was entirely satisfactory; and in reply to the second, “We do not care to handle at all the collaterals on any paper you may discount for us. Do by them as you would if yours.”
• About August 15 Atwood failed, and Hurter wrote to the appellant as follows: “At the time I loaned Mr. Atwood $5,000 of your funds on Bank of Louisville stock as collateral security, I went to the Bank of Louisville and ascertained from Mr. Morgan, the cashier, that the bank held no lien upon that stock, and informed'Morgan, as there was no encumbrance on the stock, I would make a loan thereon. Yesterday it was rumored on the street that Mr. Atwood had failed, and I went to the Bank of Louisville to have the stock transferred to you, which the cashier refused to do. I thought it my duty to inform you of this, so that you can take such steps as your attorney may advise.”
Some time afterward the appellant’s vice-president, in company with Hurter, called at the Bank of Louisville and demanded a transfer of the stock into the name of appellant, *531 which was refused on the ground that Atwood was indebted to the Bank of Louisville, and that it had a charter lien on its stock for the indebtedness of stockholders to it.
In that interview Hurter stated in substance, that before making the loan he had called on the president and cashier of the Bank of Louisville, and they both told him the bank had no lien on the stock. This they both denied in the presence of appellant’s vice-president.
When the note matured the appellant brought suit upon it against Atwood, and it also brought suit against the Bank of Louisville to compel it to transfer the stock. Judgment was recovered against Atwood, on which an execution issued, which was returned “ no property found.” The Bank of Louisville answered, and set up its lien on the stock, which was adjudged superior to the lien of appellant, and the stock was sold, and failed to satisfy the prior lien, whereby the loan made for the appellant became a total loss.
This action was then brought against the appellee to recover damages for failing to take sufficient security for the loan.
The appellee, in its answer, denied all charges of negligence, and averred that it had acted with due caution and circumspection in making the loan, and also set up and relied upon a ratification of its acts in the matter after the appellant was in possession of all the facts and circumstances connected with the transaction.
A trial resulted in a verdict and judgment for the appellee.
The only ground urged for a reversal is, that the court erred in instructing the jury in respect to the alleged ratification. The evidence showed, without contradiction, that before the appellant received the note and collaterals, and brought suit against Atwood' and the Bank of Louisville, it knew that the latter claimed a lien on the stock pledged, to *532 secure Atwood’s note for an amount exceeding its value. But it also showed that the appellee’s cashier informed the appellant, that before the loan was made the Bank of Louisville agreed to release its lien, or, what was the same thing, to transfer the stock on its books into appellant’s name.
That the appellee’s cashier knew, before he made the loan, that the Bank of Louisville had a lien on its stock for debts due the bank by the holders thereof, and that Atwood was then indebted to the bank in a sum greatly exceeding the-value of the stock, was not at any time disputed, the sole matter in dispute being whether it had agreed to waive its lien when called on by Hurter before he made the loan. That question was never finally settled until the judgment in favor of the Bank of Louisville was rendered.
Upon this evidence the court instructed the jury that if the appellee fairly and fully communicated to the appellant all the facts and circumstances connected with the loan which were known to the appellee or its agent, Hurter, and that the appellant knew of the insolvency of Atwood and the claim asserted by the Bank of Louisville, and thereafter adopted the transaction, and l’eceived the note and .collaterals and treated them as its own, the law was for the appellee, although it might have been guilty of such negligence as would otherwise have rendered it liable.
The doctrine that, if an agent has, by a deviation from his orders, or by any other misconduct or omission of duty, become responsible to his principal for damages, he will be discharged therefrom by the ratification of his acts or omissions by the principal, if made with a full knowledge of all the facts, is elementary. But the' instructions given in this ease went further, and held that if the principal, at the time of accepting the note and collaterals, knew all the facts touching the loan and affecting the value of the security, which were then known to the agent, and with such knowledge received them and *533 treated them as its own, the agent was discharged from liability. We have examined many authorities,, both elementary and judicial, in which the doctrine of ratification, as between principal and agent, is discussed, but we have not found one which considered the good faith of the agent as an element in deciding whether or not there had been a ratification; but, on the contrary, whenever the good faith of the agent has elicited remark, it has been to the effect that it could have no weight in the decision of this question. “ Indeed, in all such cases the question is not, whether the party (agent) has acted from good motives and without fraud, but whether he has done his duty and acted according to the confidence reposed in him.” (Story on-Agency, sec. 192.)
Nor do we find any authority for exonerating a delinquent agent from liability if he communicates to the principal all the facts known to him at the time and the principal ratifies the delinquency, and it afterward turns out that the facts as communicated were not the real facts of the case. In such a case the assumed condition is not that claimed to have been ratified.
It was the duty of the appellee to loan appellant’s money on good security, or such as a person of common prudence and skill in business would have esteemed good. It did loan it upon a security confessedly sufficient if unencumbered, but which, as the event has proved, was encumbered to its full value, and therefore was no security at all. The appellee, through its cashier (for whose acts we assume for the present it was liable), represented that the stock was not in lien to the Bank,of Louisville; in other words, that the security was good. To know whether the representation was true, was necessary to enable the appellant to make an election. It is true it knew that the Bank of Louisville asserted a lien, but whether that lien was superior to the appellant’s or had been waived as appellee represented, it did not and could not know *534 until the dispute was settled. We have therefore a case in which, when the alleged ratification was made, both the principal and agent were necessarily ignorant of the most material fact in the whole case, and consequently there could not have been such a ratification as would release the agent from liability, if its conduct had been such that it was otherwise liable. The gravamen of the appellant’s complaint is, that the appellee negligently failed to take sufficient security for the loan; and the defense is, that the alleged negligence has been ratified; and yet the uncontradicted evidence is, that at the time of the supposed ratification Jit was not know;n that there had been the slightest negligence, or that the security was insufficient. It was not the act of making the loan that needed to be ratified; that was expressly authorized. Nor did the acceptance of the bank-stock as security need ratification. The stock was confessedly worth more than the loan. That which needed ratification was the acceptance of the stock subject as it was to the lien of the Bank of Louisville as security for the loan. If, as the appellee affirmed, it was not subject to the asserted lien, there had been no negligence, and there was nothing to ratify. Whether it was subject to that lien was never known until the suit to test the question was decided; and then, and not until then, did the appellant obtain a knowledge of the facts necessary to make an election whether to adopt or repudiate the acts of its agent.
We have found no case, the facts of which are sufficiently like the facts of this, to make the decision rendered a controlling precedent in this case; but assuming the two fundamental rules of the law of agency, (1) that -when the agent has deviated from his duty he becomes liable to his principal for such losses as are the direct and natural consequence of such deviation, whether his motives were good or bad; and (2) that he is only released from that liability when the principal, with a knowledge of all the facts, ratifies his departure from his duty, *535 and we think there can be no doubt of the correctness of the conclusion we have reached.
There was not only no evidence that the appellant knew at the time of the alleged ratification that the appellee had taken insufficient security, but, on the contrary, the evidence was uncontradicted and conclusive that it did not, and there was therefore no evidence upon which to base an instruction on the subject of ratification.
None of the cases cited by appellee’s counsel are like this. We can not undertake to review them one by one, and point out the distinction between them and this case; but an examination of them will show that in every one in which the agent; was held to be discharged from liability for deviations from orders or duty, the principal knew at the time of the ratification that the agent had not done his duty; whereas, in this case, as we have already seen, the appellant did not and could not know that the appellee had not taken ample security until it was decided that the Bank of Louisville had not waived its lien on the stock. This conclusion is sustained by the cases of Bank of St. Marys v. Colder (3 Strobh. 403); Walker v. Walker (5 Heiskell, 425); and by Wharton on Agent and Agency, sec. 67.
It is next contended that Hurter, the cashier, and not the appellee, was appellant’s agent, and made the loan, and that therefore the appellee is not responsible. It is a sufficient answer to this to say, that no such issue was presented by the answer, and that it is there distinctly averred that the appellee made the loan and took the security.
It is also claimed that the appellee had no authority to act as agent in loaning money, and is therefore not liable even if guilty of negligence in the matter.
The appellee is an incorporated bank, and we are unable to discover in its charter any thing which prohibits it from engaging in any business incident to general banking. The answer *536 presented no issue upon the point, and we can'not say as matter of judicial knowledge, that the loaning of money for a customer is not a part of the legitimate business of general banking. Whether it is or not, is a question of fact depending upon the custom of banks, and if it was intended to rely that such business was ultra vires the bank, the issue should have been made in the answer in order that the appellant might offer evidence to show that it was incidental to the business of banking, and therefore within the implied powers of the appellee.
It seems to us therefore that on the pleadings and evidence embodied in the record, the only question involved was, whether the appellee used that care and skill in taking security which, under the circumstances, it was its duty to use.
If, in view of the character and standing of Atwood at the time the loan was made, the knowledge the appellee (or what is the same thing, its cashier) had of the lien on the collaterals given to the Bank of Louisville by its charter, what took place between the appellee’s cashier and the officers of the Bank of Louisville, and his information as to Atwood’s indebtedness to it, the loan would not have been made on the security taken by a person of ordinary prudence and skill in banking, the appellee is liable, otherwise it is not.
Judgment reversed, and cause remanded for a new trial upon principles not inconsistent with this opinion.