MARY T. CLARK, Appellant, v. DANIEL M. CLARK, Respondent.

**St. Louis Court of Appeals, November 20, 1894.**

1. **Unauthorized Act of Agent:** RATIFICATION BY ACCEPTANCE OF PROCEEDS. A principal does not ratify the unauthorized act of his agent by accepting the proceeds or fruits thereof, if knowledge of it did not come to him in time to enable him to repudiate the entire transaction without essential injury.

2. **Practice, Trial:** FAILURE OF PROOF OF CAUSE OF ACTION PLEADED. No recovery can be had, when the evidence does not tend to establish the cause of action pleaded.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*R. S. MacDonald, M. Kinealy* and *Jas. R. Kinealy* for appellant.

*Geo. R. Lockwood* for respondent.

BIGGS, J.—Albert M. Clark died testate in the state of New York.  By his will he gave to his son Albert certain real estate, and a Wabash Pacific Railroad bond, of the face value of $1,000.  To his daughter, Mrs. Peck, he gave a life estate in two one thousand dollar railroad bonds, numbered 14341 and 14336, issued by the Louisville & Nashville Railroad.

Company; the remainder to go to her brother and sisters equally. He also bequeathed to her $500 in money. He gave to his daughter, the wife of the defendant, two one thousand dollar second mortgage bonds issued by the Texas and Pacific Railroad Company, numbers 7358 and 7359, and $1,000 in money. To his daughter, the plaintiff, he gave absolutely one first mortgage and one second mortgage bond issued by the Texas and Pacific Railroad Company, each of par value of $1,000, and numbered respectively 12964 and 7360. He also bequeathed to her the interest on another first mortgage bond of the same company for the same amount, number 24362, and at her death the principal of the bond to be divided equally between her heirs. He also bequeathed to her the sum of $2,500 in money. The above named legatees were the only children of the deceased, and the property specified was all the property owned by him at the time of his death. Albert and Mrs. Peck were named as executors of the will; Albert alone qualified.

The defendant, acting as the agent for the legatees, went to the state of New York and effected a complete settlement of the estate with the executor, by which the bonds were released from the trusts and delivered to defendant. The surrogate court approved the settlement, and discharged the executor. In this action the plaintiff sues the defendant for damages for disobedience of instructions in making the settlement. She alleges in her petition that her instructions to the defendant, in reference to the settlement, were "to receive from said executor and deliver to her all the property aforesaid, which by the terms of said will was to be delivered and paid to plaintiff by said executor, and under said will; and to make such arrangements for the payment to her of said interest on said bond, number 24362, and for the care of said bonds num-

bers 14341 and 14336, in which she had said undivided one-third interest in remainder mentioned, as he might deem best for plaintiff's interest. * * * Thereupon the defendant assuming to act for and in behalf of plaintiff, pretending that he was empowered so to do, did with the said executor and the said Mrs. Daniel Peck unlawfully and wrongfully, and in violation of his authority and instructions as agent of plaintiff, proceed to divide said property among the legatees under said will, including said bonds numbers 24362, 14341 and 14336, and retained and received for the plaintiff the following money and property, viz: said first mortgage bonds of the Texas and Pacific Railway Company, numbers 12964 and 24362; said second mortgage bonds of said Texas and Pacific Railway Company, numbers 7360, 7358 and 7359, and $780 in cash; all of which money and property last mentioned, retained for the plaintiff as last stated, was then and there of value and amount of $3,760, and no more." The plaintiff claimed as damages the difference between the value of the property bequeathed to her, and the value of the property and money turned over to her by the defendant, which difference she alleged to be $1,000.

The defendant in his answer admitted the agency, and that he had made a settlement with the executor of the entire estate, but he denied that the settlement as made was contrary to the plaintiff's instructions; the details of the settlement were set forth. At the close of the evidence the court refused an instruction of nonsuit. No other instructions were asked or given, and no exceptions saved at the trial. The court found the issues for the defendant, and the plaintiff has appealed.

A written memorandum was filed by the trial judge indicating the reasons for his findings. He held,

in substance, that under the pleadings and evidence there could be no judgment against the defendant; that if any liability existed, as shown by the evidence, it was for a wrongful and unfair division of the money and property received from the executor. We concur in the conclusion reached, but for reasons different from those expressed in the memorandum, in which the nonliability of the defendant in this action was placed on the ground that the plaintiff had received and retained the fruits of the settlement. The general rule undoubtedly is that, if a person receives money or property which he knows to be the result of the dealing of a person professing to act for him, he will be held to have ratified the transaction whether previously authorized or not. But there are exceptions to this rule. The exception stated by the supreme court of Minnesota in the case of *Humphrey v. Havens*, 12 Minn. 298–324, is quite applicable to the facts in the present case. The court said: "There is no doubt that if one person knows that another has acted as his agent without authority, or has exceeded his authority as agent, and, with such knowledge, accepts money, property or security, or avails himself of advantages derived from the act, he will be regarded as having ratified it. This would not be the case when the knowledge that the person had exceeded his authority is not received by the employer so early as to enable him, before a material change of circumstances, to repudiate the whole transaction without essential injury." We have precisely that state of facts here. The bonds and money were expressed to the plaintiff in a distant state. When she received them, there had been a distribution and settlement of the estate; the settlement had been approved by the surrogate court, and the executor finally discharged. The power to repudiate had passed from the plaintiff, and she

was justified in holding on to what she had received without being charged with a ratification of the settlement. The fact that she received property, which, under the will belonged to other legatees, or was subject to testamentary trusts, could make no difference; for the particular disposition of the property and the trusts imposed by the will had been ignored in the settlement, and the entire assets, except Albert's portion, were placed in the hands of the defendant for distribution according to the value under the will of the respective interests of the plaintiff and her two sisters.

In our opinion, the judgment was for the right party, because the petition stated one cause of action, and the evidence tended to establish another essentially different. *Price v. Railroad*, 72 Mo. 414; *Carson v. Cummings*, 69 Mo. 325; *Smith v. Shell*, 82 Mo. 215; *Edwards v. Albrecht*, 42 Mo. App. 497. The cause of action stated is for damages for the violation of instructions in making the settlement, whereas the evidence tended to show that the settlement as made was fairly within the instructions given, and that, if the plaintiff has any ground of complaint, it was for an unfair distribution of the property received by the defendant. Before the defendant went to New York there had been considerable correspondence between the plaintiff and him in reference to a settlement of the estate. It seems that both were suspicious of the executor, and, as he was entitled to administer without bond and was insolvent, they were quite anxious to effect some sort of a compromise with him, by which the bonds would be released from the trust and the entire assets fully and finally distributed without delay. Different propositions of settlement and compromise with the executor were suggested, but in the entire correspondence the controlling idea was to get the property out of the hands of the executor. The

following letter, which contained the defendant's final instructions, must be read in the light of the previous correspondence:

"AUGUSTA, ARK., March 28, 1890.

"*My Dear Brother:—*

"Yours of 26th just received. I realize that I, by the proposed arrangement, get just the same, as by the terms of the will, except the interest on the $1,000 bond; but, if I understand right, Hatty's two trust bonds and my one are to be sold to help raise the $10,700. It is on this understanding that I base my decision; but, even if these are still held in trust, I can make application to the court to sell it for the $920, or whatever the market price may be, and invest it in some form that does pay interest, as long as the principal is left in trust; that would be granted.

"My proposition is to settle according to the will; then R. and I each equally raise $700 or $800 extra for Albert. You see by the will I get $3,800 outside of the trust bond. I give $350 towards Albert's extra portion, leaving me $3,450, or if legally the trust bonds can be sold at market price, and the estate all converted into cash, I have no objection, but prefer it to be done; but in this case I desire to proceed as I said above, viz: I will pay one-half of the $700 to be given Albert, but I will not give away the remainder of the $900 which would be $570. Why should I? It is not necessary. After A. has received his $700, he has no more interest in the matter. Even supposing that I pay the entire $700, why should I donate to another heir the remainder of the $920? You surely see the utter absurdity of such a step.

"I have taken advice on this matter and looked at it from all points, and believe that my proposition is fair and equitable. Hastily,

"Your sister,

"MARY T. CLARK."

"I request that you show my lawyer, after you state the case, this letter, that he may fully understand my stand. I append his instructions to his power of attorney.

"If the will can be broken at all, it can with reference to the bonds being held in trust, the same as to any other part of it.

"Albert may not consider it breaking the will to receive the estate for settlement, and then go contrary to its directions, but I hope he will get through it all honestly and safely.

"Please send me the address of attorney as soon as you know it.

"How did you expect to raise the $10,700, to be divided in 4 parts—$2,300, except by selling the three trust bonds. Now, if these three bonds can not be touched, there will be but $7,560 for the heirs.

Albert's share will be . . . . . $1,000. house
                                    500. bonds
                                  ─────────
                                  $1,500.
R.'s 2 bonds, 760 and 1000 . . . . . . $1,760
Hatty's cash . . . . . . . . . . . . .    500
M.'s 2 bonds, $920, 380 and 2500 . . . . 3,800

"Now, if Albert must have his $2,300, we must raise $800 for him, and I will give half instead of one-third, which would be my proportionate share, in order that Hatty may not have to give anything, if $500 is all the cash she receives, when she would have to use that; but if her bonds are sold for $2,200, I presume she will willing pay her one-third of Albert's bonus."

The plaintiff inclosed in this letter the following paper to be delivered to her attorney in New York:

"AUGUSTA, WOODRUFF CO., ARK.,
                              "March 28, '90.

"I hereby instruct the lawyer, whom I have this day appointed my attorney to enter my appearance before the surrogate court in the city of Brooklyn, N. Y.,—that I am willing to pay to my brother Albert Clark one-half of the amount $700, which amount, in addition to the portion of my father's estate bequeathed him by the terms of the will, said Albert Clark accepts as satisfactory in the settlement of the estate; but— aside from this $350, or possibly $400 as the case may be, I forbid any further part of my portion to be taken to increase the legacy of either of the remaining heirs.                              MARY T. CLARK."

In the foregoing letter the defendant was directed either to receive the money and bonds belonging absolutely to the plaintiff under the will and secure the safe custody of the bond in which she had a life estate and also those in which she had an interest in remainder, or, if possible, to effect such a settlement with the executor as to release the property from the trusts imposed, in order that there might be a complete and absolute distribution. This latter plan was so much preferred by the plaintiff that, in order to accomplish it, she authorized the defendant and her attorney to pay her brother $400 out of her share. The defendant brought about the settlement on that basis without paying Albert any bonus. The latter was only allowed to retain $100 for the purpose of defraying the expenses of administration. Therefore, in our opinion, the allegations in the petition are not sustained by the proof. It is not a case of variance, but of failure of proof.

For the foregoing reasons we are of the opinion that the judgment of the circuit court is right. With the concurrence of the other judges it will be affirmed. It is so ordered.