OXFORD LAKE LINE, A CORPORATION EXISTING UN-
DER THE LAWS OF THE STATE OF ALABAMA,
PLAINTIFF IN ERROR, VS. FIRST NATIONAL BANK
OF PENSACOLA, A CORPORATION UNDER THE
LAWS OF THE UNITED STATES, DEFENDANT IN ER-
ROR.

1. In the absence of special instructions, if a time bill of ex-
change with bill of lading attached be sent to an agent for col-
lection, there is an implied obligation upon the agent to hold
the bill of lading until the bill of exchange is either accepted
or paid, according to circumstances, and he cannot deliver the
bill of lading without requiring the one or the other·

2. Where the instructions to an agent are couched in
such uncertain ᵗterms as to be reasonably susceptible
of two different meanings, and the agent in good
faith and without negligence adopts one of them,
the principal cannot be heard to assert, either ¦as against the
agent or as against third persons who have in good faith and
without negligence relied upon the same construction, that he
intended the authority to be executed in accordance with the
other interpretatation.

3. If the principal's instructions will reasonably admit of. two
different interpretations, the agent is not thereby authorized
to disregard the instructions entirely and substitute his own
judgment therefor; but if he acts at all in such cases he must
follow one of the interpretations reasonably derivable from
the uncertain terms of the instructions.

4. It is the privilege of the principal to give instructions, and
the duty of the agent to obey them, and any unauthorized de-
viation from or neglect of the principal's instructions whereby
damage results to him, will entitle him to an action against
the agent, although the latter in deviating from or neglecting
to obey instructions, acted in good faith and honestly believed
he was acting for the best interests of his principal.

5. Express or implied ratification of the unauthorized act of an

O. L. L. v. First Nat. Bank of Pensacola—Statement of Case.

agent must, in order to bind the principal, be with full knowledge of all material facts, and if material facts be either suppressed or unknown, the ratification is invalid because founded in fraud or mistake.

6.    The principal has a right to presume that his agent has followed instructions and has not exceeded his authority, and generally it does not devolve upon him to make inquiries as to the facts. Whenever it is sought to bind him upon the ground of ratification, either express or implied, it must be shown that he ratified upon full knoweldge of all material facts, or that he was wilfully ignorant, or purposely refrained from seeking information or that he intended to adopt the unorthorized act at all events and under whatever circumstances.

7.    A bad replication is a good answer to a bad plea.

In the Supreme Court of Florida, June Term, A. D. 1898.

Writ of Error to the Circuit Court for Escambia County.

### Statement.

On October 25, 1892, plaintiff in error instituted suit against defendant in error in the Circuit Court of Escambia county, the declaration filed November 7, 1892, alleging that the First National Bank of Anniston, State of Alabama, did on August 1, 1892, send and remit to defendant a bill of lading of the Louisville & Nashville Railroad Company for a dummy engine and two coaches, shipped on said railroad, at Anniston, Ala., by the plaintiff to be delivered at Pensacola, State of Florida, and accompanying said bill of lading was a draft drawn by the plaintiffs on the Pensacola Terminal Company in favor of H. A. Tracy, cashier of said First National Bank of Anniston, for the sum of $1,650, dated June 30, 1892, payable thirty days after date, and also

another for the sum of $1,650, payable at sight; that said First National Bank of Anniston did at the time of sending said bill of lading and drafts, instruct defendant not to deliver said bill of lading to said Pensacola Terminal Co. without the acceptance by the said Pensacola Terminal Co. of said first above mentioned draft, as well as the payment of the last above mentioned draft, but that defendant, disregarding its duty in that behalf, did deliver said bill of lading to said Pensacola Terminal Co. upon the payment of said sight draft, without procuring from said Pensacola Terminal Co. an acceptance by it of said thirty-day draft, and did return said thirty-day draft to said First National Bank of Anniston without an acceptance of the same by the said Pensacola Terminal Co., whereby defendant became liable to pay said First National Bank of Anniston the sum of $1,650, the amount of said thirty-day draft; which claim and demand for said sum, by reason of the matters set forth, the said First National Bank of Anniston did, on October 4, 1892, assign and transfer to plaintiff, wherefore, plaintiff says it is damaged in the sum of $3,000.

On December 27, 1893, defendant, by leave of the court, filed two pleas to plaintiff's declaration, to each of which plaintiff replied specially. These replications were demurred to by defendant, upon the ground that they were not sufficient answers in law to the pleas. On January 11, 1894, the court sustained this demurrer, and, plaintiff declining to plead further, final judgment upon the demurrer was entered for defendant, from which this writ of error was taken to our June term, 1894.

The first plea alleged "that the First National Bank of Anniston did not instruct this defendant in the manner and form as is alleged in said plea, but all of its

instructions in connection with said drafts were embraced in the words 'deliver attached documents only on payment of drafts,' contained in a letter to defendant from the said First Nat'l. Bank of Anniston, inclosing to the defendant the said bill of lading and drafts." The replication to this plea alleged "that the instructions accompanying said bill of lading and drafts were not such as stated in said plea, but were contained in a document partly in print and partly in writing, a copy of which document is hereto annexed as a part of this replication, which instructions as presented by said document are in their legal tenor and effect such as are alleged in said declaration." The document referred to, omitting head as immaterial, was as follows:

"Anniston, Ala., Aug. 1st, 1892.
First Nat'l. Bank, Pensacola, Fla.

Dear Sir: I enclose for collection and remittance No. . Deliver attached documents only on payment of drafts.

| 5178 N. P. | 1650. |
| 5179 N. P. For acceptance | 1650. |

Respectfully Yours, H. A. Young, Cashier."

The second plea alleged that the drafts mentioned in the declaration were drawn by the plaintiff upon the Pensacola Terminal Co. in pursuance of a written contract between the plaintiff and the Pensacola Terminal Co. for the sale of the engine and cars mentioned in the declaration, a copy of the contract being attached to and made a part of the plea. The plea further alleged that upon presentation of the drafts to the Pensacola Terminal Co., it declined to pay the sight draft and accept the thirty-day draft, because, as it alleged, the property was not in the condition provided for by the contract, but offered to pay the sight draft

and to leave the amount of the balance of payment for said property open for adjustment between it and the plaintiff, if the said bill of lading should be surrendered to it, and defendant believing that its instructions from the First Nat'l. Bank of Anniston authorized it so to do, surrendered said bill of lading to the Pensacola Terminal Co. upon its payment of the sight draft, which payment was made on the 6th day of August, 1892; that on said day defendant notified the First Nat'l. Bank of Anniston that the said $1,650 sight draft had been paid, and that the said $1,650 thirty-day draft had not been accepted, and on the same day remitted the said $1,650, received from the said Pensacola Terminal Co. to the First Nat'l. Bank of Anniston, which remittance was received by said First Nat'l. Bank of Anniston on August 7, 1892; that on August 8, 1892, the defendant returned to the First Nat'l. Bank of Anniston the unaccepted draft which was received by the latter on August 9, 1892; that on August 12, 1892, the defendant, although the said First Nat'l. Bank of Anniston knew the said fact before, notified the said First Nat'l. Bank of Anniston of the refusal of the Pensacola Terminal Co. to accept the said thirty-day draft as aforesaid, and of defendant's consequent action in surrendering to it the said bill of lading without the acceptance of said draft; that plaintiff knew the facts before stated before the assignment to it alleged in the declaration; that neither the First Nat'l. Bank of Anniston nor the plaintiff had ever notified the Pensacola Terminal Co. of any repudiation of the action of defendant in delivering the bill of lading, nor had they ever taken any action against the Pensacola Terminal Co. to recover back the said property although the same had ever since remained the property of the Pensacola Terminal Co., and in its possession, nor ever offered to return or ever returned to

the defendant or to the Pensacola Terminal Co. the said sum of $1,650 received by the First Nat'l. Bank of Anniston as aforesaid. The contract referred to in this plea was dated May 19, 1892, and thereby the plaintiff agreed to deliver to the Pensacola Terminal Co. free on board cars on the L. & N. R. R. Co's. tracks at Anniston, Ala., a certain dummy equipment owned by the plaintiff, consisting of one H. K. Porter & Co. dummy engine No. 1087, one Brill dummy coach and one LaClede dummy coach, in condition therein very minutely specified, all to be put in first class repair and condition subject to the inspection and approval of two persons therein named. In consideration thereof the Pensacola Terminal Co. agreed to pay plaintiff $3,300, one half of $1,650 cash on presentation at Pensacola of draft for the amount with bill of lading for the engine and two cars attached, payable in New York exchange, and the other one-half to be paid by a thirty-day acceptance, payable in New York exchange. The replication to this plea alleged that there was no foundation for the alleged belief of defendant that it was authorized to deliver said bill of lading without a previous acceptance of the thirty-day draft, because the contrary plainly appears in the writing, which accompanied the drafts and bill of lading; which writing was made a part of the replication and was the same as that referred to and made a part of the replication to the first plea; wherefore the replication alleged the defendant did deliver said bill of lading in the face of the plain instructions in said writing contained. It was further alleged that defendant did not at the time of sending to the First National Bank of Anniston the proceeds of said sight draft and notifying it of the non-acceptance of said thirty-day draft, also notify said bank of Anniston that defendant had surrendered said bill of lading, but did suppress

and conceal said fact, as appears from the telegram and writing thereto annexed as parts of the replication. The telegram referred to dated August 6, 1892, addressed to the First National Bank (of Anniston) reads: "Draft paid remitted today, but thirty days not yet accepted." The writing referred to was dated August 6, 1892, and reads as follows: "Your favor of 7, 20, received with stated enclosure. We enclose our check on New York $1,650.00

Exchange.........  ......  .......  .........  .....
Collection charges..................  .......  ......
$................................  .........  ...........  ...
      In payment of the items stated below.
                    Yours truly,
                    J. S. Leonard, Cashier,
                        Per J. M. Frater.
No 106.
                    Oxford L. Line,
            5158    Pensacola Ter. Co.    1650.
We enter  5159    Pensacola Ter. Co.    1650.
      We beg to confirm our telegram advising remittance to you to-day."

The errors assigned are that the court erred, first, in sustaining defendant's demurrer to plaintiff's replication to defendant's first plea; second, in sustaining defendant's demurrer to plaintiff's replication to defendant's second plea.

*Richard L. Campbell and John C. Avery*, for Plaintiff in Error.

*Blount and Blount*, for Defendant in Error.

CARTER, J.:

No question as to the measure of plaintiff's damages is here involved or argued. It is conceded by all

parties that the plaintiff's declaration alleged a cause of action, but it is insisted by defendant in error that defendant's pleas each presented defenses to the declaration, the effect of which was not avoided by the plaintiff's replications thereto.

1.    We think the plaintiff's replication to the first plea presented a complete answer thereto.   In the absence of any special instructions if a time bill of exchange with bill of lading attached be sent to an agent for collection, there is an implied obligation upon the agent to hold the bill of lading until the bill of exchange is either accepted or paid, according to circumstances. He can not deliver without requiring the one or the other.   Commercial Bank of Manitoba v. Chicago, St. P. & K. C. Ry. Co., 160 Ill. 401, 43 N. E. Rep. 756; Bank v. Cummings, 89 Tenn. 609, 18 S. W. Rep. 115; National Bank of Commerce of Boston v. Merchant's National Bank of Memphis, 91 U. S. 92; Dows v. National Exchange Bank of Milwaukee, 91 U. S. 618; Schoregge v. Gordon, 29 Minn. 367, 13 N. W. Rep. 194; Porter on Bills of Lading, § 523, *et seq.*; Daniel on Negotiable Instruments, § 1734b.   In this case, however there were special instructions.   Two bills—one at sight, the other at thirty days—were sent to defendant for collection and remittance, with instructions to procure acceptance of the time bill, and to "deliver attached documents" (the bill of lading) "only on payment of drafts."   If there is any ambiguity about these instructions, it consists in an uncertainty as to whether the bill of lading was to be delivered upon payment of the sight draft and acceptance of the other, or upon payment of both.   There certainly was no authority given thereby to deliver the bill of lading upon payment of the sight draft only.   It is unquestionably true, as contended by the defendant in error, that where the instructions

to an agent are couched in such uncertain terms as to be reasonably susceptible of two different meanings, and the agent in good faith and without negligence adopts one of them, the principal can not be heard to assert, either as against the agent or as against third persons who have in good faith and without negligence relied upon the same construction, that he intended the authority to be executed in accordance with the other interpretation. Mechem on Agency, §315. But because an agent's instructions will admit of different interpretations, he is not thereby authorized to disregard them entirely, and substitute his own judgment in the place thereof. If he acts at all in such cases, he must follow one of the interpretations reasonably derivable from the uncertain terms of the instructions. In this case defendant did neither; but, on the contrary, substituted its own ideas of what was proper under the circumstances, thereby acting directly antagonistic to its instructions. The replication was a good answer to the first plea, and the demurrer should have been overruled.

II. It is argued with great confidence and ability by counsel for defendant in error that under the facts disclosed by the second plea and replication the Anniston Bank ratified the defendant's act in surrendering the bill of lading without requiring acceptance of the thirty-day draft, and in support of this view it is claimed that the Anniston Bank received the $1,650 proceeds of the sight draft with sufficient notice to put it upon inquiry as to the surrender of the bill of lading, and retained the money after full knowledge that the bill of lading had been surrendered. In considering this question we must bear in mind that the defendant was acting as an agent of limited powers over a specific subject-matter. The subject-matter consisted of two drafts and a bill of lading. Its powers were defined by special

instructions, viz: to deliver the bill of lading upon payment of one draft and acceptance of the other. The contract between plaintiff and the Pensacola Terminal Co. was not attached to the drafts, nor was defendant given any power or authority over it, nor had plantiff held out to defendant or the Terminal Co. in any way that defendant was authorized to exercise any authority over this contract, nor was there anything in the nature of the bill of lading, drafts, or instructions transmitting them to defendant, indicating that they had any connection with plaintiff's contract with the Terminal Co. The defendant's duties were · plain and simple, the extent of its authority clearly defined by specific instructions. It is the privilege of the principal to give instructions, and the duty of his agent to obey them. Any unauthorized deviation from or neglect of the principal's instructions whereby damage results will entitle him to an action against the agent, even though the latter in deviating from or neglecting to obey instructions, acted in good faith and honestly believed he was acting for the best interest of his principal. Mechem on Agency, §§ 474-477; Story on Agency §§ 192, 217c; Walker v. Walker, 5 Heisk, 425; Bank of Owensboro v. Western Bank, 13 Bush, 526, S. C. 26 Am. Rep. 211; Hall v. Storrs, 7 Wis. 253. When the defendant, without authority, delivered the bill of lading which enabled the Terminal Co. to get possession of the plaintiff's property without acceptance of the time draft, it disobeyed plain instructions, and even though done under the honest belief, as alleged in the plea, thereby subjected itself to liability unless, as it claims, its acts were subsequently ratified by the plaintiff. The plea does not claim an express ratification of defendant's act. It alleges subsequent conduct on the part of the plaintiff which it is claimed constitutes an implied ratification, viz: the ac-

ceptance and retention of the proceeds of the sight draft collected at the time the bill of lading was delivered to the Terminal Co. Express or implied ratification of the unauthorized act of an agent must, in order to bind the principal, be with full knowledge of all material facts. If material facts be either suppressed or unknown, the ratification is invalid, because founded in mistake or fraud. Town of Madison v. Newsome, 39 Fla. 149, 22 South. Rep. 270; Bell v. Cunningham, 3 Pet. 69; Bank of Owensboro v. Western Bank, 13 Bush, 526, S. C. 26 Am. Rep. 211; Humphrey v. Havens, 12 Minn. 298; Bohart, Dillingham & Co. v. Oberne, Hosick & Co., 36 Kan. 284, 13 Pac. Rep. 388; Martin v. Hickman, 64 Ark. 217, 41 S. W. Rep. 852; Adams Express Co. v. Trego, 35 Md. 47; Dean v. Bassett, 57 Cal. 640; Pennsylvania, Delaware and Maryland Steam Navigation Co. v. Dandridge, 8 Gill & J. 284, text 323; Vincent v. Rather, 31 Tex. 77, S. C. 98, Am. Dec. 516; First National Bank of Fort Scott v. Drake, 29 Kan. 311, S. C. 44 Am. Rep. 646; Bennecke v. Insurance Company, 105 U. S. 355; Owings v. Hull, 9 Pet. 607; Davis v. Talbot, 137 Ind. 235, 36 N. E. Rep. 1098; Holm v. Bennett, 43 Neb. 808, 62 N. W. Rep. 194; Baldwin v. Burrows, 47 N. Y. 199; Wheeler v. Northwestern Sleigh Co., 39 Fed. Rep. 347; Clark v. Clark, 59 Mo. App. 532; Bryant v. Moore, 26 Me. 84 S. C. 45 Am. Dec. 96. Generally speaking it does not devolve upon the principal to make inquiries as to the facts. He has a right to presume that his agent has followed instructions, and has not exceeded his authority. Whenever he is sought to be held liable on the ground of ratification, either express or implied, it must be shown that he ratified upon full knowledge of all material facts, or that he was willfully ignorant; or purposely refrained from seeking information, or that he intended

to adopt the unauthorized act at all events, under whatever circumstances.    Combs v. Scott, 12 Allen, 493; Marsh v. Joseph, L. R. (1897) 1 Ch. Div. 213; Phosphate of Lime Company v. Green, L. R. 7 C. P. 43; Mechem on Agency, § 129.    Tested by these rules the second plea was bad, and even if the replication was itself bad, it was a good answer to a bad plea.    Wade v. Doyle, 17 Fla. 522.    The plea admitted that the Terminal Co. paid the sight draft on August 6, after it had notified defendant that the property  embraced  in its contract with plaintiff was not in the condition provided by said contract, and that the draft was paid upon the understanding that the bill of lading was to be surrendered without acceptance of the time draft, and that the amount of the balance of payment for the property be left open for future adjustment between the Terminal Co. and the plaintiff.    By this course the defendant not only violated its instructions as a special agent, but it took upon itself to make a new contract for the plaintiff without the slightest semblance of authority to do so.    Yet subsequent to this transaction defendant telegraphed the Anniston Bank:  "Draft paid; remitted today, but thirty days not *yet* accepted," and later, on the same day, defendant remits  to cover  sight  draft, and writes regarding the other draft, "we enter," with no intimation whatever that the time draft would not be accepted, although it had then been dishonored and the bill of lading  delivered.   Neither was there the slightest intimation in this letter or telegram that the bill of lading had been surrendered, or that defendant had assumed to change the contract between plaintiff and the Terminal Co., and the expressions, "not yet accepted," and "we enter," relative to the time draft, were calculated to convey the impression that the draft would be accepted, although defendent then knew it would

not.   Under these circumstances the *acceptance* of the proceeds of the sight draft would not become the basis of a claim of ratification, for plaintiff then had no knowledge of any departure from instructions by the defendant; but, on the contrary, had every reason to suppose that they were being complied with.   The plea alleges that defendant returned the unaccepted draft to the Anniston Bank on the 8th of August, and that on the 12th it notified that bank of the refusal of the Terminal Co. to accept the time draft, and of defendant's consequent action in surrendering the bill of lading without such acceptance, but it is nowhere alleged that defendant or any one else ever informed plaintiff at any time that the bill of lading was surrendered upon the understanding that the amount of the balance due under plaintiff's contract with the Terminal Co. was to be, not the definite amount to be evidenced by the time draft, but such amount only *as might be determined upon a future adjustment.*   This was a very material matter for the plaintiff to know in determining whether it would ratify what its agent had assumed to do for it.   Plaintiff might well ratify the release of its security, *viz*: the delivery of the property to the Terminal Co., without requiring as a prerequisite the acceptance of the time draft, looking to its remedy upon the original contract, which would have been ample to secure the full amount evidenced by the time draft if the property had been inspected and approved by the persons named in the contract, while it might very promptly have repudiated the unauthorized acts of its agent had it known that such agent had not only released its security, but had actually given the Terminal Co. an advantage by leaving the balance due to be ascertained, not in accordance with the contract, *but upon some future adjustment.*

Consequently, plaintiff did not ratify defendant's acts by *retaining* the proceeds of the sight draft, in ignorance of this material fact. There are none of the elements of an estoppel set up in this plea, as contended by the defendant, and an essential element of ratification is wanting. We are, therefore, of the opinion that the demurrers to plaintiff's replications should have been overruled.

The judgment is reversed with directions to the Circuit Court to enter an order overruling the demurrers to plaintiff's replications, and for such further proceedings as may be comfortable to law.