## No. 5791.

### JULES A. BLANC VS. MUTUAL NATIONAL BANK OF NEW ORLEANS.

To fix the indorser's liability, payment of the note must be duly demanded of the maker and notice of his failure to comply with his contract given to the indorser. The latter's obligation then becomes absolute and unconditional, as much so as that of the maker. Demand or notice on either of them may, however, be waived. If both are waived, either expressly or by necessary implication, the indorser at once assumes an unconditional liability.

In the present case the indorsers declared: "We waive protest on this note." Whether these words imply also a waiver of notice, is a question upon which the authorities are by no means uniform. But the indorsers added: " We hold ourselves responsible for the payment of the note, which is hereby extended thirty days." Under the circumstances of the case the indorsers were not released by the want of compliance with the usual formalities of the law. After the dishonor of the note when it became due, the situation of the indorsers was no longer that of indorsers upon commercial paper, but that of embarrassed debtors obtaining time as best they could from the creditor.

If the bank has caused the plaintiff any damage by failing to use proper diligence in the collection of his note he can recover the amount of his loss upon proving that it results from the negligence of the bank; but, under the present cause of action, to wit: the release of the indorsers, through the failure of the bank to cause the protest of the note, the plaintiff can not recover.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom, J. Lacey & Butler,* for plaintiff and appellee. *Kennedy & Chiapella* and *A. & W. Voorhies,* for defendant and appellant.

LEONARD, J. The plaintiff, Blanc, is the holder and owner of the following promissory note:

"NEW ORLEANS, December 16, 1872.

"On the twenty-first day of January next after date I promise to pay to the order of H. F. Given & Co. fifteen hundred dollars at the office of H. F. Given & Co., in New Orleans. Value received.

" (Signed)                                                   W. STACKHOUSE.
" (Indorsed)                                                 H. F. GIVEN & CO."

On the day on which the note fell due, Messrs. H. F. Given & Co. signed the following indorsement: " We hereby waive protest on this note, and

65

hold ourselves responsible for the payment of the same, which is hereby extended thirty days from this date."

, On the twenty-sixth day of February, 1873, a second indorsement was made on the note as follows:

· "Five hundred dollars being paid on account of this note, we agree to the extension of payment of one thousand dollars for thirty days from this date, and still hold ourselves responsible for the payment of the same at maturity.

"(Signed) · H. F. GIVEN & CO."

Lastly, there is a third indorsement, as follows: .

"NEW ORLEANS, March 31, 1873.

"We hereby waive protest, notice of protest, and service thereof on the within note, and hold ourselves equally responsible for the payment of one thousand dollars thereof on the twenty-fifth day of November next (1873), to which it is extended by consent, all interest paid to that date.

"(Signed) H. F. GIVEN & CO."

Some weeks prior to the expiration of this third and last extension, the plaintiff, Blanc, deposited the note for collection with the Mutual National Bank of New Orleans. The bank, however, took no steps to collect the note at the termination of the extension. No demand was made upon either the maker or the indorsers. There was no protest, notice of protest or of non-payment. When Mr. Blanc afterward went to the bank and asked the note-clerk why the note had not been protested, the latter replied that he "didn't think it was necessary; the protest had been waived."

. Blanc thereupon filed this suit, alleging that, by the failure of the bank to perform the acts required by law to fix the liability of the indorsers, H. F. Given & Co., the latter had been released from all liability as indorsers on the note, and that the bank had thereby become liable to him for the full amount due upon the same. The bank answered that Given & Co., the indorsers, did not and never had claimed that they were released from liability on the note; that there were no funds provided to meet the note at the place of payment, and that a presentment there, even if necessary (which is, however, denied), would have been entirely useless. The further averment is made, that the plaintiff is in possession of collateral security more than sufficient to cover the amount of the note in question.

· "That it is the duty of a bank with whom negotiable paper is left for collection," said the Supreme Court of New York in McKinster vs. Bank of Utica, 9 Wend. 46, "to take the necessary measures to charge the indorsers upon default of the maker, and that they are responsible to the owner of the note for neglect or omission to perform such duty, is fully established in the case of Smedes vs. Bank of Utica, 20 Johns. 372, and

the same case in error, 3 Cowen, 663." The same doctrine has been recognized by the Supreme Court of Louisiana. "It is clear," said Simon, J., in Armington vs. Gaslight and Banking Company, 15 La. 414, "that by failing to demand payment and not using the ordinary diligence to secure the liability of the parties to the bill the defendants have made it their own, and have become liable to the owners for the amount." See, also, Duruford vs. Patterson et al., 6 M. 460. And in such a case "the amount of the obligation intrusted for collection is *prima facie* the measure of damages sustained by the principal." Livaudais vs. Denis, 4 An. 300.

The question therefore presented for our consideration in the present case is, whether H. F. Given & Co. were released from their liability by the failure of the bank to cause the note of Stackhouse to be protested. "Our action rests," say plaintiff's counsel in their brief, "upon a want of liability on the part of the indorsers occasioned by the fault of the bank."

The obligation of an indorser upon a promissory note is conditional. He binds himself to pay, if the maker fails to do so. To fix the indorser's liability, payment of the note must be duly demanded of the maker, and notice of his failure to comply with his contract given to the indorser. The latter's obligation then becomes absolute and unconditional, as much so as that of the maker.

Demand or notice on either of them may, however, be waived. If both are waived, either expressly or by necessary implication, the indorser at once assumes an unconditional liability. In the present case the indorsers declared: "We waive protest on this note." Whether these words imply also a waiver of notice is a question upon which the authorities are by no means uniform. But the indorsers add: "We hold ourselves responsible for the payment of the note, which is hereby extended thirty days." After such a waiver, was the holder bound to make demand and give notice at the expiration of the thirty days, or to obtain a second waiver in order to hold the indorsers?

In the case of Forster vs. Jurdison, 2 East. 105, an accepted bill of exchange was duly protested at its maturity against the drawers. The holders, however, wrote to the drawers that they would agree to retain the bill "until the latter end of the week," believing that they would then be able to collect it from the accepter. This, however, they failed to do, and some weeks later brought suit against the drawers. The latter objected that it was incumbent upon the holders to have given them notice that the acceptor had not taken up the bill at the end of the week, and that, by their failure so to do, the drawers were discharged. Lord Ellenborough held that no second protest or notice was necessary, and that the drawers were bound.

The case of Ridgway & Budd vs. Day, 13 Pa. State, 113, bears a striking resemblance to the one at bar. Jacob Day was indorser upon a note of Samuel W. Day. Before the maturity of the note the holders wrote to the indorser, informing him that it was probable the note would not be paid and offering to extend the term of payment if he should so desire. Jacob Day answered: "I am willing to extend the time for thirty days longer, and of course will stand responsible for the payment of the note as originally intended." Several other extensions were granted by the holders, Jacob Day continuing to hold himself responsible "as originally intended." When he was ultimately sued, he urged that he was released from liability on the ground that he had never received notice of protest or of non-payment. The court said: "The letter from the indorser to the payee contains a distinct statement that if the time is extended for thirty days he will hold himself bound. This is a distinct guarantee that he will hold himself bound at the end of thirty days after maturity, and under like circumstances the holder was not bound to give notice."

Why should payment have been demanded of Stackhouse at what plaintiff terms the "prolonged maturities" of the note? The note was certainly not due as to him at those successive periods. He was no party to the extensions that were granted to the indorsers. As to him there was but one maturity. He failed to meet his obligation at that date, and the holder was at liberty to bring suit against him at once. He could not be expected to provide funds at any other date to meet the note at the original place of payment, because, not being privy to the new arragements between the holder and the indorsers, he would have no reason to suppose that the note would again be presented to him. Nor had Given & Co. any ground to believe that the note would be paid by Stackhouse at the termination of the several extensions. They seem to have left him out of view altogether, and to have taken charge of the obligation themselves. It was they who paid the five hundred dollars on the note. They, no doubt, looked to Stackhouse to reimburse them, but they alone dealt with the holder. After the dishonor of the note, the situation of Given & Co. was no longer that of indorsers upon commercial paper, but of embarrassed debtors, obtaining time as best they could from the creditor. It is true that on the occasion of the third extension they "waived protest," though they neglected to do so at the time of the second extension. We are at a loss to understand why the waiver should have been thought necessary on the one occasion and not on the other. Be that as it may, they waived some thing to which they were not entitled, and which they had no reason whatever to expect. Indeed, they seem to have supposed, as they naturally would from the nature of their contract, that the note would be presented for payment *to them.*

Thus their own counsel propounded this question to a member of the house: "Could you have paid that note if it had been presented?" And the answer was: "Well, sir, it is questionable. We could have paid it; the question is whether we would have done so."

If the bank has caused the plaintiff any damage by failing to use proper diligence in the collection of his note, he can recover the amount of his loss upon proving that it resulted from the negligence of the bank. But under the present cause of action—the release of the indorsers through the failure of the bank to cause the protest of the note—we are of opinion that the plaintiff can not recover.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be reversed, and that ours be for the defendant, with costs of both courts.