[No. 21767. Department Two. August 14, 1929.]

H. F. OSTRANDER, *Respondent*, v. YOKOHAMA SPECIE BANK, LIMITED, *Appellant*.[1]

[1]Reported in 279 Pac. 585.

428

*Shank, Belt & Fairbrook,* for appellant.
*McMicken, Ramsey & Rupp,* for respondent.

MAIN, J.—This action was brought to recover damages for failure to properly protest two drafts or bills of exchange. The cause was tried to the court without a jury, and resulted in findings of fact and conclusions of law sustaining a recovery. From the judgment en-

tered in favor of the plaintiff in the sum of $2,806.35, together with interest, the defendant appeals.

The facts may be stated as follows: The Service Trading Company was a corporation organized under the laws of this state, with its principal place of business in Seattle. The National Bank of Commerce was engaged in the banking business in the same city. The respondent, H. F. Ostrander, also resided in that city. Samuel, Samuel & Company, Ltd., was engaged in business in Osaka, Japan. The appellant, The Yokohama Specie Bank, Ltd., a corporation, was also engaged in the banking business in the same city.

January 31, 1924, the Service Trading Company issued and delivered to the respondent two negotiable drafts or bills of exchange, one for $1,279.14 and the other for $1,527.21, both of which were payable sixty days after sight. The respondent indorsed the bills of exchange in blank and on January 31, 1924, delivered them to the National Bank of Commerce to be forwarded for acceptance and collection. The National Bank of Commerce sent the bills to the appellant at Osaka, Japan, accompanied by a letter of instructions, as follows:

"Kindly mail us prompt advice of the fate of these bills specifying maturity of time drafts. If drafts are dishonored by non-acceptance and/or non-payment protest and telegraph us advice giving reason."

The appellant received the bills at Osaka, March 4, 1924, and on the same day presented them at the office of Samuel, Samuel & Company, Ltd., for acceptance. The person in the office to whom they were presented stated that the manager of that company "was out of town and that they would be obliged if we could wait for a few days." The bills were again presented on the fifth of March, when a like statement was made. Practically the same thing occurred on the seventh.

The bills were again presented on April 9, 1924, and were then protested for non-acceptance, as is stated therein, "for the reason of absence of the representative this note was refused for acceptance." March 14, 1924, the drawer of the bills, the Service Trading Company, became insolvent and a receiver was appointed therefor. As above indicated, the charge of negligence is the failure of the appellant to duly protest the bills after they had been presented and dishonored.

■ It is first contended by the appellant that, under the Japanese law, the bills were not dishonored by non-acceptance. Article 466 of the Japanese Commercial Code provides:

"The holder of a bill payable on a fixed day after sight shall present it to the drawee for acceptance within one year, but the drawer may fix a shorter period for presentation.

"If the holder does not prove by a certificate of protest that he has made such presentation as mentioned above, he loses his rights under the bill against the prior parties."

Article 467 is as follows:

"If the holder presents a bill payable on a fixed day after sight, and the drawee does not accept it or does not write the date of acceptance on the bill, the holder shall have a protest made within the period for presentation. In such case, the date on which the protest is made is considered as the day of presentation.

"If the holder fails to have a protest made, he loses his rights under the bill against the prior parties.

"In case the acceptor does not write the date of acceptance on the bill, if the holder fails to have a protest made, the last day of the period for presentation is considered as the day of presentation."

It will be observed that, under article 466, the holder of bills payable on a fixed day after sight must present them to the drawee for acceptance "within one year."

That provision is not applicable, because, accompanying the bills, was a letter of instruction which indicated plainly that "prompt advice" of the fate of the bills was desired. The letter also directed that, if the drafts were dishonored, "protest and telegraph," giving reason. Under this letter of instruction, the appellant did not have one year in which to present the bills, as provided in the Japanese Code, but was required to proceed with reasonable promptitude. That code, as appears in article 466, provides for acceptance within one year or within a shorter period. Article 467 does not authorize a delay of one year in making protest after there has been a presentation, because in such a case, "the date of protest is deemed to be the day of presentation." The provisions of the Japanese law above quoted do not relieve the appellant from liability.

It is next contended that the court should have permitted the appellant to prove by a witness, offered for that purpose, what the customs existing at Osaka, Japan, were, as applied to the facts of this case. The evidence offered to prove the custom was rejected. If it had been received, its effect would have been to, by the proof of a custom, place a construction upon the law of Japan. For this purpose, a custom cannot be proven. No decision of any court of Japan was offered construing the law, and this being true, it is the duty of the courts in the jurisdiction where the trial occurs to construe the statute according to the rules applicable to the construction of a domestic statute. In *Clark v. Eltinge,* 38 Wash. 376, 80 Pac. 556, 107 Am. St., 858, it is said:

"If no proof as to the holding of any court of that state is produced, then it is the duty of the court where the trial is being had to interpret and construe the statute of said sister state according to the same rules that are applicable in the construction of a domestic statute. This we conceive to be the proper method,

instead of attempting to prove by some lawyer his view of said statute, or his opinion as to what the consensus of the opinion of the bench and bar of said other state might be.''

The evidence offered was properly rejected for the reason indicated, and probably the objection was good on at least one other ground.

It is next contended that, even though the law of Japan be assumed to be the same as that existing in this state, the bills were not dishonored for non-acceptance. Section 145 of the Negotiable Instruments Act (Rem. Comp. Stat., § 3535) provides that the presentment for acceptance must be made to the drawee or some person authorized to accept or refuse acceptance. In this case, the bills were presented, as stated, at the office of Samuel, Samuel & Company, Ltd., and were not rejected because there was no one at the office authorized to accept or reject, but, as a matter of accommodation, it was requested that the matter be delayed because the manager was not at the office. Section 149 (*Id.* § 3539) provides that a bill is dishonored when it is duly presented for acceptance and such acceptance as is prescribed by this act is refused or cannot be obtained.

Under the evidence in this case, it cannot be held that there was no one in the office of Samuel, Samuel & Company, Ltd., authorized to accept or reject the bills. It was the duty of the appellant, after they had been presented and neither accepted or rejected within twenty-four hours, to promptly protest them. This was not done, and more than a month after the bills were first presented, they were again presented and at that time protested for the very reason that existed at the time of the first presentation and each subsequent one. Further than this, under Rem. Comp. Stat., § 3538, presentation for acceptance is excused and a bill may

be treated as dishonored by non-acceptance "where, after the exercise of reasonable diligence, presentment cannot be made." The manager of Samuel, Samuel & Company, Ltd., at the time the bills were presented, was at the office of that company at Kobe, Japan, which was only a short distance from Osaka, with easy transportation between the two cities. If it be assumed that there was no one in the office of Samuel, Samuel & Company, Ltd., at Osaka authorized to accept or reject the bills, it would appear that reasonable diligence would have required the appellant to have presented them to the person having that authority.

■ It is next contended that the respondent failed to prove that he had been in any way damaged by the failure of the appellant to promptly protest the bills. The measure of damages in such a case would be the actual loss suffered. This loss is *prima facie* the amount of the bills, but this may be mitigated by evidence offered which would show the actual loss. Section 329 of Daniel on Negotiable Instruments (3d ed.), vol. 1, is as follows:

"The measure of damages which the holder is entitled to recover of the bank, or other collecting agent, who has been guilty of negligence or default in respect to it, is the actual loss which has been suffered. That loss is *prima facie* the amount of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum. 'The defendant may mitigate damages by showing either the solvency of the maker, the insolvency of the indorser, or that the paper was partially or wholly secured, or any other fact that will lessen the actual loss to the plaintiff; the real loss occasioned by the improper conduct of the defendant being the fact for the jury to arrive at in measuring the plaintiff's damages.' "

■ The respondent was not required to prove with certainty that, if due care had been exercised by the appellant, he would have been able to have collected the

bills or drafts from the drawer. He was only required to show a reasonable probability that, had the appellant exercised due care, a collection would have resulted. In *Omaha National Bank v. Kiper,* 60 Neb. 33, 82 N. W. 102, it is said:

"If there is reasonable probability that the entire debt would have been collected but for the agent's negligence, the amount of the claim is the measure of recovery. *First Nat. Bank v. Fourth Nat. Bank,* 77 N. Y. 328. In the recent case of *Dern v. Kellogg,* 54 Nebr., 560, 565, it is said: 'It is claimed that there was no proof of damages; that is, that it was not shown that had the bank been diligent the drafts could have been collected. In such cases it is usually impossible to show with certainty that if due care had been observed the collection would have been made. The law is not so rigid in its requirements for the protection of the negligent agent. It is only necessary to show a reasonable probability that with due care the collection would have resulted. The burden then rests on the defendant to show that there was no damage.' "

The Service Trading Company, even though insolvent, continued in business until March 14, 1924. During this time, it received and paid out money in considerable amount. Notwithstanding its insolvency, had the bills been promptly protested, there is a reasonable probability that, in the regular course of business, the drawer would have taken care of them prior to the time that the receiver was appointed. In *American National Bank v. Bank of Bandon,* 240 Fed. 624, the Federal circuit court of appeals for the ninth circuit said:

"The lumber company was a going business concern before the notice of dishonor was sent, and evidence that it was in fact without sufficient assets to pay its debts or even insolvent was no excuse for the neglect of the American Bank. This is so because the effect of the mistake and negligence of the American Bank was

to mislead the Bandon Bank and to deprive it of right of opportunity to seek prompt recourse against the lumber company, whereby it might have obtained payment or security from the lumber company before the date when it was forced into involuntary bankruptcy.''

That declaration by the court is sustained by the authorities cited in the opinion, which need not be assembled herein.

Finally, it is contended that the court erred in rejecting evidence offered by the appellant for the purpose of showing that a balance appearing on the deposit ledger of the National Bank of Commerce on March 8, of $7,670.69, was not an asset of the Trading Company. The respondent offered evidence showing that on this day the Trading Company, as shown by the deposit ledger, had a balance in the sum mentioned. The appellant offered evidence to meet this, to the effect that, on the same day that the ledger shows the balance, the bank appropriated the money, or the greater portion of it, and applied it on the indebtedness owing by the Service Trading Company to the bank. This evidence should have been received. Its tendency would have been to disprove evidence offered by the respondent. Assuming the fact to be, however, that the bank did appropriate the money, as the offer of proof indicated, it would not change the result. This evidence, when taken into consideration with the fact of insolvency and all the other evidence in the case, does not show that there was not a reasonable probability that the bills of exchange would have been collected from the drawer had they been promptly protested after dishonor.

The judgment will be affirmed.

MILLARD, FRENCH, and PARKER, JJ., concur.

BEALS, J. (dissenting)—In my opinion the evidence fails to prove that respondent suffered any loss by

reason of the alleged negligence of appellant. I therefore dissent from the conclusion reached by the majority.