GRIFFIN v. NEELIS

———

(January 27, 1930. Opinion and Decree.)
(April 21, 1930. Rehearing Refused.)

———

Montgomery & Montgomery, of New Orleans, attorneys for plaintiff, appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. Plaintiff sued the defendants, Neelis and Dosher, in solido, for the sum of $2,000, with legal interest from March 14, 1918, until paid. Dosher filed an exception to the jurisdiction of the court ratione personæ, which was sustained by the lower court, and from which no appeal was taken. On the trial on the merits there was judgment in favor of defendant Neelis, dismissing plaintiff's suit, and plaintiff has appealed.

The voluminous record shows that plaintiff was a dredge boat captain and was working in Vermilion parish during the years of 1912-1913. He is an uneducated man, with very little business experience. After finishing the work under contract, he went to the Bank of Gueydan, where he had an account, for the purpose of withdrawing his money. The defendant Neelis was the cashier of the Bank of Gueydan and also the treasurer of the town of Gueydan. Neelis suggested to plaintiff, Griffin, that he was in a position to invest plaintiff's money at 8 per cent, and Griffin gave Neelis a check for $8,000, which was deposited in the Bank of Gueydan. Neelis was given full power and authority to draw against the deposit of $8,000, and from time to time loaned money to various parties for plaintiff's account. The agreement between Neelis and plaintiff was a verbal one, and it is not clear as to just exactly what was said at that time, but it is admitted by the defendant Neelis that he did receive the money and invest it for plaintiff's account. After considerable negotiations between plaintiff, who was a resident of New Orleans, and defendant Neelis, who was a resident of Gueydan, all of the $8,000 was properly accounted for, except the sum of $2,000, which is the basis of the present suit.

Plaintiff demanded the $2,000 from Neelis, who said that he had loaned the money to E. N. Dosher, one of the defendants (against whom the suit was dismissed on the exception to jurisdiction below), and produced an unsecured note alleged to have been signed by Dosher dated December 1, 1916, and payable to John T. Griffin, bearing 8 per cent interest, and payable December 1, 1917. Neelis had indorsed on the back of the note, in his handwriting, an extension of one year, on the principal and an acknowledgment of one year's interest. The note is in Neelis' handwriting, except the signature, which is Dosher's.

On February 15, 1917, plaintiff wrote to defendant that he wanted an accounting, and wished to withdraw his money at once. Thereafter plaintiff made several more demands for a settlement, and finally employed Mr. Morvant, a certified public accountant, to make a trip to inspect and check the records of the Bank of Gueydan in order to obtain a proper settlement of the account. After checking the records, Mr. Morvant advised that there was a balance on deposit in the bank to plaintiff's credit of $6,219.61, and that Neelis had produced two notes, one signed by E. M. Dosher for $2,000, the subject-matter of the present litigation, and one signed by A. J. Cronk for $750. The accountant also advised that there was an item of interest

on a note of one Baker. On May 7, 1917, plaintiff wrote defendant that he had received the statement, which was satisfactory to him, but the notes remained in the Bank of Gueydan in Neelis' charge for collection, and he undertook to collect them. From this time until April, 1920, Neelis attempted to collect the note from Dosher, but without effect. Neelis then placed the note in the hands of his attorney, Judge Gordy, for collection, who made amicable demand on Dosher without avail, and on July 29, 1920, Neelis' attorney sent the note to plaintiff's attorney, after plaintiff had refused to advance the costs of court necessary to sue Dosher, claiming that he was looking to Neelis for payment. On September 1, 1922, plaintiff entered suit against the defendant, Dosher, as the maker of the note and against Neelis as borrower of the money or as trustee of the fund, or as the agent of plaintiff for the investment and collection of the money.

Neelis answered, denying that he had borrowed the money, or that he was the trustee of the fund, but admitted "that he had loaned out certain moneys of the plaintiff at plaintiff's request to parties residing in Vermilion Parish, but he absolutely denies that he guaranteed the plaintiff the amount, or that he acted in any manner as the trustee for the plaintiff." Defendant further admitted "that $2000.00 of plaintiff's money, with the knowledge and consent of plaintiff, was loaned to E. N. Dosher, and the said E. N. Dosher executed a note payable to plaintiff for the said amount, stipulating for the payment of interest and the said Dosher paid interest which was received by the said plaintiff and the said plaintiff extended payment of said note from time to time. Finally, as the note was not paid by said Dosher, your respondent sent said note to attorney Gordy, with the request that he collect same for the account of said plaintiff and that after the note went into the hands of Judge Gordy, your respondent had nothing more to do with it."

After the testimony in the case was taken, and nearly six years after suit was filed, defendant Neelis, on June 12, 1928, filed an exception of no cause of action and a plea of estoppel. The exception of no cause of action was referred to the merits by the lower court, but was not urged here, and our appreciation of the record shows that the exception was without merit. On the question of estoppel, defendant argues that the account was settled on May 7, 1917, when plaintiff wrote defendant, after Mr. Morvant had examined the bank's books, as hereinbefore recited.

We think that the judgment of the district court, referring the plea of estoppel to the merits, was correct, because the record shows that, at the time that plaintiff wrote defendant Neelis, on May 7, 1917, Neelis had failed to inform plaintiff of the circumstances and facts surrounding the loaning of the money to Dosher and of the facts and circumstances surrounding his attempts to collect this money from Dosher. We do not consider the plea of estoppel well founded, for the additional reason that defendant Neelis has not been prejudiced or injured by the action of plaintiff in writing the letter of May 7, 1917, and Neelis in no way changed his position as a result of it.

We do not deem it necessary to consider whether plaintiff loaned the money to Neelis, or whether Neelis was the trustee of this fund to be invested, for we feel that we can rest our decision upon the ground that Neelis was the agent of plaintiff for the purpose of investing the fund of $8,000, and attending to its collection, both as to principal and interest.

The record is clear that Neelis was the agent of plaintiff for the purpose of investing the fund of $8,000 and attending to its collection. The admissions in his answer, his own testimony, and the testimony of plaintiff and his witnesses, convince us of that fact.

The next subject of inquiry is whether or not Neelis properly and legally conducted himself as the agent of plaintiff in the investment of his funds and their collection.

The evidence with reference to this issue shows that E. N. Dosher was a young farmer who had worked on Neelis' farm and had demonstrated to Neelis' satisfaction his industry and reliability. Neelis and I. L. Baker, Jr., had bought this farm from I. L. Baker, Sr., on February 27, 1912, and Neelis had bought the interest of I. L. Baker, Jr., on February 16, 1914, thus making Neelis the owner of the farm. On February 1, 1915, Neelis sold the property to Dosher for $8,800; the full consideration being represented by two mortgage notes of $4,400 each. Dosher testified that he and Neelis were in partnership in the operation of the farm, but Neelis denies this. However, we are convinced that Neelis was in partnership with Dosher in the operation of the farm, and was in partnership at the time he loaned Dosher the $2,000 represented by the note in question, and therefore the loan was for the mutual benefit of Dosher and Neelis, as partners.

Some dispute arose between Neelis and Dosher, and on March 17, 1919, a written agreement of compromise and settlement was entered into between them, after some negotiations between their respective attorneys, whereby Neelis agreed to have the property re-transferred to himself, assuming the two mortgage notes of $4,400 and two mortgage notes of $1,200 each of I. L. Bak-

er, Sr., and I. L. Baker, Jr., all bearing on the property. In addition to this, Neelis agreed to pay Dosher $4,000 cash, less the sum of $1,124.62, with interest thereon represented by a note signed by Dosher, and which was owned by the Bank of Gueydan. Neelis deducted this amount from the $4,000, and paid the bank in cash, and the balance of the $4,000 was paid to Dosher's attorney in cash.

The record shows that at this time, pending negotiations for the compromise settlement, and at the time of the compromise settlement Neelis had the Dosher note in his charge and care for collection, but, instead of deducting $2,000, with the accrued interest, from the $4,000, as he had done for the Bank of Gueydan with reference to its note of $1,124.62, he deliberately or negligently and carelessly, in breach of his duty and obligation to his principal, failed to do so.

The evidence convinces us that, at the time the plaintiff wrote Neelis on May 7, 1917, he did not know that there was any partnership existing between Dosher and Neelis, and therefore the statement in the plea of estoppel that the settlement of May 7, 1917, was made with a full knowledge of the facts and circumstances connected with the deposit of $8,000 is not true.

It is significant to note that in the compromise agreement of March 17, 1919, between Neelis and Dosher, nothing is said of the note of $2,000 that Dosher owed plaintiff. Dosher testified that he did not know of the existence of the $2,000 note until about August, 1920, when he received a letter from Judge Gordy, making demand for payment. He testifies that he had signed other notes for Neelis in connection with their partnership business, and that on one occasion, when Dosher's brother wanted to borrow some money, Dosher signed the note in blank and left it

with Neelis, and was somewhat surprised when his brother came to the farm and informed him that he would have to come to the bank to sign the note, in order that he might get the $500. Upon coming to the bank, Dosher reminded Neelis that he had already signed the note for that purpose, which Neelis at first denied, but shortly afterwards laughingly said that he had made a mistake and had torn the note up. When Dosher asked to be shown the pieces of the note, he said that they had been scattered about. Dosher then signed another note, which he left with Neelis to be filled out. That is the only way in which he can account for the present note, and he denies that he owes it, claiming a full release by the compromise agreement of the partnership's affairs.

We are convinced that it was only during the course of the trial that plaintiff obtained full knowledge of the manner in which Neelis had handled this item of $2,000. We also note that Neelis loaned the money to Dosher on an unsecured note, and while, in his testimony, he says that Dosher made money during the years of 1917 and 1918, the fact remains that he did not collect anything on the principal of the note from Dosher.

Judge Pugh, the attorney for Dosher, testified that Dosher was without any assets that were subject to seizure, as his farm was incumbered to its full value, and the implements and mules on it were within the exemption provided by law. But, in spite of this fact, Neelis loaned Griffin's money to Dosher, who was his partner at the time, $2,000 on an unsecured note. Notwithstanding the fact that he was constantly assuring plaintiff in his several letters that he was making every effort to collect the money, he deliberately or negligently failed to deduct it from the $4,000

which was in his possession at the time of the compromise settlement on March 17, 1919. Under the circumstances, we feel that Neelis was guilty of a breach of faith, and was negligent and careless in the discharge of his duties to his principal, and that the loss of $2,000, plus interest, sustained by the plaintiff, is the direct result of Neelis' negligence.

In the case of Collins v. Andrews, 6 Mart. (N. S.) 195 (page 102), the Supreme Court held that it is the duty of an agent to prove occurrences which prevented him from collecting debts placed in his hands for collection, or, in other words, to show due diligence.

In the case of Livaudais v. Denis, 4 La. Ann. 301, the court said:

"Either St. Avid knew the declaration of the dividend and neglected to collect it; or else he neglected to make due inquiry from time to time, and his ignorance must be attributed to his own fault. He knew that the insolvent estate was under administration, and that dividends had been already made; and it was his duty to use reasonable diligence, from time to time, by calling upon the syndic. If this had been done, it is fair to suppose he would have been equally successful with the other agent. It has been repeatedly held that, when obligations are placed in the hands of an agent for collection, it is not sufficient for him, after a lapse of time, to offer to return them, without showing that he exercised ordinary care and industry to get the money. Police jury v. Bullit, 8 Mart. (N. S.) 328. Collins v. Andrews, 6 Mart. (N. S.) 195.

"The amount of the obligation entrusted for collection is prima facie, the measure of damages sustained by the principal."

In Blanc v. Mutual National Bank of New Orleans, 28 La. Ann. 923, 26 Am. Rep. 119, the court approved the principle announced in Livaudais v. Denis, 4 La. Ann. 301, that the amount of the obligation in-

trusted for collection is prima facie the measure of damages suffered by the principal. The record shows that Neelis not only failed to rebut the prima facie case of damages established by plaintiff, but convinces us that plaintiff has lost the amount sued for as a result of Neelis' fault.

For the reasons assigned, the judgment of the district court is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of John P. Griffin, plaintiff herein, and against John G. Neelis, defendant, in the full sum of $2,000, with legal interest from March 14, 1918, until paid, and all costs of these proceedings.