## No. 12,422.

COLORADO INVESTMENT AND REALTY COMPANY *v.* STUBBS.

(12 P. [2d] 351)

Decided May 23, 1932. Rehearing denied June 20, 1932.

Messrs. CHINN & STRICKLER, Mr. BEN S. WENDELKEN, for plaintiff in error.

Mr. C. H. DUDLEY, Messrs. STRACHAN & HORN, for defendant in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

AT the trial, on fitting issues, it fairly appeared that

the defendant, a corporation, was engaged in making farm loans, and in buying and selling these and other securities, and that the plaintiff was an investing customer of the company; that May 29, 1922, defendant made a loan of $5,000 to one Peddie, who secured it by a first deed of trust on land and water rights in Logan county; that the loan, due in five years, bearing seven per cent interest, payable semi-annually, was evidenced by a principal note and ten interest notes, the latter in the sum of $175 each; that June 16, 1922, plaintiff, wishing to invest $5,000, went to the office of the company and was told of the Peddie loan; that the responsible officials of the company stated they had carefully examined the security and that it was choice and ample, and recommended the purchase of that particular loan; that they further stated the company would act for plaintiff in the matter of collecting the interest as it accrued, and the principal at maturity, would see that the taxes were timely discharged and insurance maintained on improvements on the land, all, with prompt remittance to plaintiff of collections, to be done without charge to him; that plaintiff had not seen the land, did not know Peddie, and believed and relied on the representations of defendant's officers as to the value of the loan, its desirability as an investment and the care which it was to receive from the defendant, and in such belief and reliance he purchased it, paying to the company $5,000 plus accrued interest, and received the notes, indorsed without recourse.

It further appeared that from time to time plaintiff made inquiry of the company as to the condition of the loan, the last time in August, 1926, and on each occasion was assured that no detail was being overlooked and everything was all right; that although Peddie paid only the two interest notes first maturing, the company nevertheless remitted to plaintiff at the maturing times of the six succeeding interest notes, but did not communicate Peddie's defaults to plaintiff.

November 12, 1926, defendant by letter advised plain-

tiff that Peddie had not only been in default in interest payments as indicated, but that the taxes had not been paid for any of the time the loan had been running, not even for the year the loan was made, 1922, facts always known by defendant's officers, but of which they did not advise plaintiff, nor was he otherwise informed thereof; that when plaintiff learned of the condition of the loan, taxes had accumulated in so great an amount, and the security so depreciated, that the aggregate of the tax liens, superior to his deed of trust, made the security for the loan valueless, and the maker of the note was then insolvent; that in the meantime defendant had taken to itself an assignment of the water rights and a conveyance of the land, notice of which was for the first time given plaintiff in the letter of November 12, 1926. It also appeared that when the defaults first warranted foreclosure, as well as during the period of redemption following reasonably prompt foreclosure, the market value of the security was well in excess of all then existing liens, including plaintiff's deed of trust. On this record the trial court found and adjudged that plaintiff was entitled to recover, as in damages, and the measure adopted was the face of the principal note and unpaid interest, or $6,203.88.

■ 1. It is urged on review that at most defendant's failure to advise promptly of Peddie's defaults operated only to postpone action, and that there was no certainty that with knowledge plaintiff would have proceeded at once to foreclose or taken other steps to protect his interests. Within the facts here we think the defendant may not justly claim the benefit of such speculation. From the inception of plaintiff's ownership of the Peddie note, defendant was his agent, expressly charged and impliedly required to keep its principal informed as to any circumstance coming to its knowledge calculated in reasonable prospect to impair the security for the loan. The happenings between the first default in 1923, known by defendant and not disclosed to plaintiff, and November,

1926, when disclosure of accumulated defaults was made, were sufficient to change a collectible claim into one wholly uncollectible. It is our view that the point should be resolved not on what plaintiff would have done, but rather on what he could have done, had his agent been faithful. *Lienau v. Dinsmore,* 41 Howard's Practice (N. Y.), 97; *Ostrander v. Yokohama Bank,* 153 Wash. 427, 279 Pac. 585; *Griffin v. Neelis,* 14 La. App. 301, 125 So. 888; 1 *Mechem on Agency* (2d Ed.) §1320. "Even where the principal is habitually negligent in attending to his own interests, it forms no excuse for similar negligence on the part of his agent." *Allen v. Suydam,* 20 Wend. (N. Y.) 321, 32 Am. Dec. 555.

2. The record justified the measure of damages adopted by the court. Clearly the agent was negligent in matters essentially material. But for the agent's derelictions plaintiff would have been in position to protect his investment. In such circumstances the amount of the claim is the measure. *Omaha Nat. Bank v. Kiper,* 60 Neb. 33, 82 N. W. 102. In another Nebraska case the court said: "It is claimed that there was no proof of damages; that is, that it was not shown that had the bank been diligent the drafts could have been collected. In such cases it is usually impossible to show with certainty that if due care had been observed the collection would have been made. The law is not so rigid in its requirements for the protection of the negligent agent. It is only necessary to show a reasonable probability that with due care the collection would have resulted. The burden then rests on the defendant to show that there was no damage." *Dern v. Kellogg,* 54 Neb. 560, 74 N. W. 844. "If there is reasonable probability that the entire debt would have been collected but for the agent's negligence, the amount of the claim is the measure of the recovery." *Ostrander v. Yokohama Bank, supra.*

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.