## BLONDEAU v. SOMMER.

### No. 4666.

Court of Civil Appeals of Texas. Amarillo.

Nov. 16, 1936.

Rehearing Denied Dec. 21, 1936.

JACKSON, Justice.

The appellant, Mrs. Evelyn Blondeau, joined pro forma by her husband, instituted this suit in the district court of Washington county against John Sommer, the appellee, to recover the sum of $10,000, interest, and attorney's fees, on account of the alleged negligence, fraud, and misrepresentation of appellee, agent of Mrs. Bertha Summers, deceased, in making out of the funds of his principal a loan to R. E. Pennington of $10,000 on insufficient security.

The appellant sued in the capacity of independent executrix and sole devisee under the will of her deceased mother, Mrs. Bertha Summers, who was a widow, and for several years prior to her death on March 2, 1935, was in very poor health. She was of German extraction and spoke and read the English language with difficulty. The appellee was the brother of deceased, a successful business man engaged in farming, handling cattle, and dealing in notes and securities. He, for twenty years or longer preceding the death of his sister, had authority to act as her agent, transact her business, draw checks on her bank account, sign her name thereto, and lend her money on sufficient security, and make collection of such loans.

R. E. Pennington was a practicing lawyer who for approximately thirty years had been, and still is, the attorney for appellee, and frequently drew the legal papers required in connection with the loans made by the brother for his sister, knew that appellee was agent and required to exercise ordinary care to obtain legal and sufficient security to protect the loans.

On February 4, 1928, the appellee, acting as agent, loaned to R. E. Pennington the sum of $10,000 on his promissory note of that date, payable to the order of Mrs. Bertha Summers on January 1, 1930, bearing interest at the rate of 6 per cent. per annum, payable annually, and providing for 10 per cent. attorney's fees. The note contained this provision: "This note is secured by a vendor's lien note executed by Nicholas S. Schmitz for the sum of $22,240.00, made payable to me on June 1, 1931, and said note is hereto attached as collateral security."

The vendor's lien note referred to and attached was for the amount indicated, was dated October 15, 1927, marked "No. 4," executed by Nicholas S. Schmitz, payable to R. E. Pennington on or before June 1, 1931, and evidenced a vendor's lien on 3,830

A. T. Norman and Emmet Alpha, Jr., both of Houston, for appellant.

Rosser Thomas, of Houston, and John M. Mathis, of Brenham, for appellee.

acres of land situated in Webb county, which had been conveyed to Schmitz by Pennington.

This collateral note does not on its face disclose the number of notes in the series of which it was one, nor that the lien retained was a second lien subject to a superior lien against the land given to secure the payment of an indebtedness of $106,000 evidenced by a series of notes. The maker of this collateral note, Mr. Schmitz, was released from all personal liability thereon by this clause: "It is agreed that I shall not be held personally liable for this note and in case of foreclosure of the vendor's lien, no personal judgment shall be rendered against me."

The appellee issued a check against the bank account of Mrs. Summers in favor of Mr. Pennington, which was promptly paid, accepted the promissory note and collateral note attached as evidence of and security for such loan.

The appellee testified that he demanded no abstract of title, had no appraisal made of the land, had no lawyer examine the title for his sister; required no written assignment of the lien evidenced by this collateral note, no financial statement of Mr. Pennington, and did not ask if he owned any unencumbered property; that he did not intend to make the loan without security, and but for such collateral note evidencing the vendor's lien he would not have made the loan; that he conferred with Mr. Pennington, the maker of the promissory note, "who put the proposition before me and gave me the inside on it"; that Mr. Pennington exhibited to him the series of five vendor's lien notes, the fourth of which he accepted as collateral, and he understood they were first lien notes against the land for approximately $86,000; that the value of the land was about $130,000; that Mr. Pennington exhibited to him an opinion from a firm of lawyers in Houston approving the title; that he acted in good faith and believed the vendor's lien note was ample to protect his sister, and had he not so believed he would not have made the loan.

The testimony of Mr. Pennington corroborated the evidence of appellee. He named the firm of lawyers in Houston whose written opinion he exhibited as to the condition of the title, but this opinion does not appear in the record and neither of the witnesses states the date of such opinion. The record indicates that prior to the deed to Mr. Pennington the land was unencumbered. Mr. Pennington further testified that he knew that the appellee was required to exercise ordinary care to obtain security to protect the loans he made for his sister.

The record discloses that R. E. Pennington acquired the 3,830 acres of land by deed from Espejo Land & Irrigation Company on December 14, 1926; that the cash consideration for the transaction was paid in property of the estimated value of $25,000, and for the balance Mr. Pennington executed a series of vendor's lien notes containing the accelerating maturity clause and aggregating $106,000, the last of which was due January 1, 1932. On October 15, 1927, R. E. Pennington, subject to the vendor's lien notes for $106,000, conveyed the land to Nicholas S. Schmitz for a recited consideration of $5,000 in cash and the execution of a series of five notes, each for the sum of $22,240, and the fourth of this series is the vendor's lien note attached as collateral security to the note of Mr. Pennington for the sum of $10,000 payable to Mrs. Bertha Summers.

On November 29, 1927, Mr. Schmitz conveyed the land, subject to all the outstanding indebtedness amounting to $217,200, to the Santa Maria Irrigation Company. On October 1, 1928, said company, in consideration of the cancellation of said series of second lien notes given by Schmitz to Mr. Pennington aggregating $111,240, reconveyed the land to R. E. Pennington. On June 3, 1931, the owner of the notes secured by the superior lien obtained a personal judgment against R. E. Pennington for a portion of its debt and a foreclosure of said vendor's lien against the land, and on August 4th thereafter the property was sold under execution and a deficiency judgment remained against Mr. Pennington.

The interest on the promissory note for $10,000 was paid by Mr. Pennington on the accrual date, February 4, 1929, but the principal which was due February 4, 1930, was not paid. The interest was paid for 1930 and 1931, but the record does not disclose any active effort made by the appellee to collect the principal on the note when it became due. He states in his testimony that he thought for three years after the loan that it was good and had sufficient security.

On June 6, 1933, the appellee accepted a renewal note for the sum of $11,200, the principal and the interest thereon for two

years, but interest on interest was not included as provided for in the original note. He attached to this renewal note the same vendor's lien note attached as collateral to the original, although he knew at the time that said collateral note had been released and canceled by Mr. Pennington, and that Mr. Pennington was insolvent.

It is conceded that appellee was agent of his sister, that Pennington is insolvent, and the loan a complete loss to the estate.

The appellant pleaded that Mr. Pennington was insolvent at the time of the loan; that appellee knew, or by the exercise of ordinary care could have known, thereof; that insufficient security was accepted; that the collateral note attached was a second lien; did not impose personal liability on the maker; that no abstract was demanded, the opinion of no competent attorney secured; that appellee knew, or could have known by ordinary care, that the land was not worth more than the notes for $106,000 secured by the first lien; that he obtained no transfer of the lien placed with him as collateral; that he represented to the deceased that the note was amply secured; and such representation was false, and each of such acts and omissions constituted negligence and were each the proximate cause of the damage and loss to the estate of Mrs. Bertha Summers, deceased.

The appellee urged a plea in abatement, general demurrer, and numerous special exceptions, all of which were overruled, pleaded general denial, and specifically alleged that Mrs. Bertha Summers was his sister; that in 1898 she inherited an estate of the approximate value of $7,500; that at her request he aided and advised her in the management thereof during her life, and at her death her estate had increased to the approximate value of $35,000, notwithstanding she and her family had lived out of such estate; that in the transaction involved he had acted in good faith, believing R. E. Pennington had at the time of the loan a net financial worth of $100,000, and that the loan was such as a prudent man would be justified in making.

By a supplemental petition the appellant excepted to appellee's allegation relative to the value of the estate inherited and the increase thereof because immaterial, prejudicial, and testimony to support such allegations would be inadmissible. The exception was overruled, and the action of the court thereon is urged as error.

At the conclusion of the testimony, in response to the only special issue submitted, the jury found in effect that appellee did not fail to exercise ordinary care in making the loan of $10,000 to R. E. Pennington, and judgment was entered that appellant take nothing.

The court permitted, over pertinent objection, the following testimony:

By the appellee that at some former time he had loaned to R. E. Pennington $3,000 of his own money, which was repaid. By Mr. Pennington testimony of the same transaction, and further that he had borrowed through appellee from Mrs. Summers the sum of $15,000 on January 1, 1923, which he had repaid at its due date in January, 1925; that to his knowledge, for the twenty or thirty years John Sommer handled the estate of his sister, there was never any loss until the $10,000 transaction involved in this litigation.

The appellant challenges the action of the court in overruling its exception to the pleading, and also in admitting the testimony above disclosed, and on account of the similitude of these questions we shall consider them together.

The appellee undertakes to justify the action of the court because the appellant had charged him with fraud and misrepresentation in her petition. The appellant had alleged no negligence, fraud, or misrepresentation except in connection with the one transaction involved in this controversy.

Since the rule in Texas is that scienter intent to deceive or mislead is not a necessary element of actionable fraud, where based on representations of present or pre-existing facts, evidence may not be received of other frauds or fraudulent representations of like character. Such evidence is admissible when reliance is alleged on a fraudulent promise made with intent not to perform, or where a recovery is sought for exemplary damages. 20 Tex. Jur. p. 166, 167, § 114.

"To render competent evidence of other fraudulent or criminal acts under the general rules, * * * the intent, knowledge or good faith of the person doing the act must be material, and hence evidence of this character has been held not to be admissible in an action based on fraud consisting of misrepresentations of present or pre-existing facts, since in such case scienter intent to deceive or mislead is not es-

sential and need not be shown." 17 Tex. Jur. p. 386, § 104. See, also, Stowe et al. v. Wooten (Tex.Com.App.) 62 S.W.(2d) 67.

In Corpus Juris the rule, and its converse, are stated thus: "It cannot be shown as bearing on the question of negligence on a particular occasion that the person whose conduct is involved has met with a number of similar accidents or has been guilty of negligence on other occasions, especially where such occurrences are remote in point of time; and conversely, one can not show that he was careful on a particular occasion by evidence that he was careful and prudent on other occasions." 22 C.J. p. 746, § 835.

In Missouri, K. & T. Ry. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568, 569, Judge Gaines states: "The principle, as applicable to this class of cases generally, is that when the habit of care or of negligence, as the case may be, has no connection with the specific facts in evidence bearing upon the question of care, evidence of such care or habit is without sufficient probative force to effect the determination of the question."

The rule is thus stated in 30 Tex.Jur., p. 821, § 144: "If other harmful occurrences are to be admitted for the purpose of showing knowledge of the danger, it would seem that an absence thereof during the prolonged period ought to be admissible for the purpose of establishing lack of knowledge; and the courts of some states have so held. Indeed, the facts appear to be of the same order as customary conduct which experience has shown to be harmless. The courts of Texas, however, have not apparently recognized the admissibility of proof of an absence of other harmful occurrences in similar circumstances." See French v. Southwestern T. & T. Co. (Tex.Civ.App.) 162 S.W. 406, 409, approved by the Supreme Court in answer to a certified question, 110 Tex. 505, 221 S.W. 570.

Appellant's allegations with reference to fraud and misrepresentations were of present or pre-existing facts, and she sought to recover actual damages only.

The testimony was sharply controverted as to whether appellee had represented that the note was adequately secured, and the statement of the witness Pennington that to his knowledge during the twenty or thirty years appellee had managed the estate of deceased no loss had been made, except the note in controversy, was indirectly showing the good character of appellee for honesty and fair dealing. Clara Grant et al. v. J. M. Pendley et al. (Tex.Com.App.) 39 S.W.(2d) 596, 78 A.L.R. 638, and annotation. The former transactions were remote, and whether or not such prior loans were so adequately secured as to inforce payment is not shown.

■ It is unnecessary to pass on the exception to appellee's pleading, but in our opinion the court should have excluded the testimony.

■■ The appellant urges as error the action of the trial court in refusing to submit the question of the insolvency of the borrower at the time the loan was made. This issue was pleaded and should, in our opinion, have been submitted because raised, although we deem it unnecessary to recite the testimony thereon.

"If the loan is made to a person known to be insolvent, the fact is practically conclusive evidence of the agent's fraud, but the solvency of the borrower is not conclusive evidence always that the agent has discharged his duty in the matter." 3 C.J.S. Agency, p. 45, § 161. Also, City National Bank of Wellington v. Morgan (Tex.Civ. App.) 258 S.W. 572.

■ The appellant also complains of the refusal of the court to submit to the jury whether appellee failed to obtain proper and sufficient security for the loan to R. E. Pennington, whether such failure was negligence, and the proximate cause of the loss and damage to the estate.

Under the testimony in this case no abstract or examination of title was required, no appraisal of the value of the land was made, no written assignment of the lien evidenced by the collateral note was demanded so a record thereof could be made, no financial statement was requested, and appellee did not ask the borrower if he owned any unincumbered property; there was no personal liability on the maker of the collateral note, and the property against which it purported to evidence a lien was heavily encumbered, and these issues should have been submitted.

"The principles of the law of negligence govern the liability of an agent to the principal for the loss * * * of funds which have been intrusted to the agent for investment. It is the duty of the agent lending money for another not only to act in good faith in the transaction, of the business, but also to exercise ordinary care to lend only to responsible parties and on proper security if the case may be one where

673

in addition to the responsibility of the borrower security is called for, either by the instruction of the agent or to render the loan a reasonably safe one." 2 Tex.Jur., p. 601, § 188. See, also, Murrah v. Brichta (Tex.Sup.) 9 S.W. 185; City National Bank of Wellington v. Morgan (Tex.Civ.App.) 258 S.W. 572; Meacham on Agency (2d Ed.) vol. 1, par. 1295, p. 935.

"Following the general rule a little more fully into details, it may be said to be the duty of an agent who undertakes to loan for his principal to exercise reasonable care and prudence in selection of security, in examination of the title, in the procuring of proper conveyance, in making the necessary records, and in the performance of other acts which may be necessary under the circumstances to perfect and protect the security. If he fails in the performance of this duty and loss thereby results to his principal, the agent is responsible for the amount of the loss. * * * The fact that the agent acted in good faith is no defense because it is negligence and not bad faith which is imputed to him. Nor, as has been seen, is it a defense that he acted without compensation." Meacham on Agency, vol. 1, p. 939, par. 1295.

The principle is stated in 3 C.J.S., Agency, p. 44, § 161, subdivision d, as: "Where an agent is authorized to lend or invest money of his principal, he must exercise reasonable skill and ordinary care and diligence, and will be liable for loss occasioned by his negligence as in lending money on the unsecured obligation of the borrower, or on inadequate security, or on property subject to prior mortgages, liens or other encumbrances."

The principles stated in the authorities above cited are sustained by the following decisions: Murrah v. Brichta, supra; City Nat. Bank of Wellington v. Morgan, supra; Bronnenburg v. Rinker, 2 Ind.App. 391, 28 N.E. 568; Bank of Owensboro v. Western Bank, 13 Bush (Ky.) 526, 26 Am.Rep. 211; Hardwick v. Ickler, 71 Minn. 25, 73 N.W. 519; De Hart v. De Hart, 70 N.J.Eq. 774, 67 A. 1074; Griffin v. Neclis, 14 La.App. 301, 125 So. 888.

Appellant presents as error certain statements made by each of the counsel for appellee in their argument to the jury. These statements were not justified by anything in the record, and we are not prepared to say that such statements were not injurious to appellant in view of the record in this case.

We are very much inclined to sustain appellant's assignment assailing as error the action of the trial court in refusing to direct a verdict in her behalf, since in our opinion the evidence is insufficient to support the finding of the jury; but inasmuch as the case may be more fully developed on another trial, and out of consideration for the finding of the jury, the judgment is reversed and the cause remanded.