**PUBLIC INV. CO., Inc., v. STAFFORD.**

**No. 16881.**

**Court of Appeal of Louisiana. Orleans.**

**May 6, 1940.**

Rehearing Denied June 13, 1940.
Writ of Certiorari Denied July 18, 1940.

818

Sydney J. Parlongue, of New Orleans, for appellant.

James G. Schillin and Ernest A. Carrere, Jr., both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by the holder of two promissory notes against an endorser of both notes, in which the sum of $757.69, plus interest and attorneys' fees, is claimed. It is defended upon the ground that notice of dishonor was not given and the payment of the notes extended without the knowledge or consent of the endorser.

From a judgment in favor of plaintiff as prayed for, defendant has appealed.

The Public Investment Company, Inc., is the holder and owner of two certain promissory notes, which read as follows:

"$11,600.00            New Orleans, La.,
                    "July 24th, 1928.

"On or before one year after date for value received the Hope Realty Co. Inc. promise to pay to the order of Itself Eleven Thousand six hundred & 00/100 Dollars at New Orleans, Louisiana.

"With interest after date at the rate of eight per cent per annum and if not paid at maturity and collected by an attorney or by legal proceedings, an additional sum of ten per cent on the amount of this note as attorney's fees.

        "Hope Realty Co. Inc.,
        "By (Signed)  Cecil N. Henriques,
                        "President.

"Secured by vendor's lien on lots 18 and 19, Block 176, Original Gulfport Deed, dated July 24th, 1928."

Reverse:
        "Hope Realty Co. Inc.
        "By Cecil N. Henriques
                "President

"Interest paid to July 24, 1929, note payable on or before July 24th, 1930, with 8 per cent interest from July 24, 1929.

"Interest paid to July 24, 1930, note payable on or before July 24th, 1931, with 8 per cent interest from July 24th, 1930.

"The within note is endorsed by the undersigned for the proportion and to the extent of the percentage shown opposite their respective signature:

"Ernest A. Carrere    — two-fifths
"Chas. I. Denechaud  — one-fifth
"John Stafford        — one-eighteenth
"Mary O'B Stafford   — one-fifth
"Virginia Stafford    — one-eighteenth

"Interest paid to July 24, 1931—note payable on or before July 24, 1932, with 8 per cent interest from July 24th, 1931.

"Interest paid to July 24, 1932, note extended to July 24, 1933.

"By mutual consent the payment of this note is extended to July 24th, 1934, without novation of the mortgage securing it. All interest paid to July 24, 1933. Attached to and forming part of note of Hope Realty Co. Inc., dated July 24, 1928, for $11,600.00 payable on or before one year after date with interest after date at the rate of 8 per cent per annum.

"New Orleans, La., Feb. 2, 1934.
    "Hope Realty Co. Inc.,
    "By: (Signed)  P. Earl Chartier, V.P.
    "Carrere Mortgage & Investment Company, Inc.,
    "By (Signed) C. J. Jann
                    "Vice Pres."

Second note

"Due———No. 1            $2,500.00
"Gulfport, Mississippi, January 11th, 1929.

"On or before one year after date, I, we, or either of us promise to pay to C. V. Calamia or bearer Twenty-Five Hundred Dollars ($2,500.00).

"Payable at the Commercial Bank & Trust Co., for value received, with interest from date at the rate of eight per cent. per annum, interest payable annually, without defalcation, hereby waiving presentment for payment, notice of non-payment, protest, and failure or want of consideration.

"And in the event default is made in the payment of this note, at maturity, and it is placed in the hands of an attorney for

collection, or suit is brought on the same, then an additional amount of fifteen per cent on the principal and interest on this note shall ·be added to the same as collection fees.

"Secured by mortgage on Lots 18 and 19 in Block 176, of Original Gulfport, Act dated January 11th, 1929.

> "Hope Realty Co. Inc.
> "(Signed) P. Earl Chartier,
> "Vice Pres."

Reverse:

"We, the endorsers of this note do hereby each and severally waive protest thereof, and agree that time of payment may be extended without notice.

> "Signed C. V. Calamia

"Interest paid to Jan. 11, 1931, note payable on or before Jan. 11, 1932, with 8 per cent interest from Jan. 11, 1931.

"The within note is endorsed by the undersigned for the proportion and to the extent of the percentage shown opposite their respective signatures:

"Ernest A. Carrere — two-fifths
"Chas. I. Denechaud — one-fifth
"John B. Stafford — one-eighteenth
"Mary O'B Stafford — one-fifth
"Virginia Stafford — one-eighteenth

"Interest paid to Jan. 11, 1932, note extended to Jan. 11, 1933.

"Interest paid to Jan. 11, 1933, note extended to Jan. 11, 1934.

"By mutual consent the payment of this note is extended to Jan. 11, 1935, without novation of the mortgage securing it. All interest paid to Jan. 11, 1934.

"New· Orleans, La., Feb. 2, 1934.
> "Hope Realty Co. Inc.,
> "By (Signed) P. Earl Chartier,
> "Vice Pres.
> "Carrere Mortgage & Investment Co., Inc.
> "By (Signed) C. J. Jann,
> "Vice Pres."

The maker of these notes, the Hope Realty Company, was a corporation organized for the purpose of buying certain real estate in Mississippi. The incorporators were Ernest A. Carrere, who subscribed to ten shares, Andrew T. Stafford who subscribed to ten shares and Chas. I. Denechaud who subscribed to five shares. The note for $11,600, dated July 24, 1928, was secured by a first mortgage on Mississippi real estate, the only asset of the corporation. The note for $2,500, dated January 11, 1929, was secured by a second mortgage on the same property.

Mrs. Virginia Stafford Gardiner, the defendant, is the daughter of Andrew T. Stafford, one of the incorporators of the Hope Realty Company. Andrew Stafford died on August 24, 1927, and on August 10, 1928, the ten shares originally held by him; were transferred to. John F. Stafford, as agent for the heirs of Andrew Stafford. The Mississippi property, which had been mortgaged for the security of both notes, was sold under foreclosure proceedings in 1935 and brought $4,000 which was applied as a credit against the first mortgage note.

It is the contention of the plaintiff's counsel that "this is not a case where a third person who has signed as endorser or surety or guarantor is sought to be held liable upon the default of the principal debtor. When defendant placed her signature on this note, she was the owner of her undivided interest in the 10 shares of stock issued to John F. Stafford on August 10, 1928, as her agent. * * * She can not accept the benefit of the issuance of the stock and now attempt to repudiate her signature. * * * The guarantors of this note, including defendant, were not accommodating the corporation. They were accommodating themselves. * * * They were not endo.:sers of a promissory note under the Negotiable Instruments Law, whereby they agreed to pay the note upon default of the maker. They were merely acknowledging and ·assuming that they individually owed a certain percentage of the face of these notes, which percentage was figured according to their distributive interests as stockholders in the corporation." It is admitted, however, that no notice of dishonor or of the extension of the notes was ever given to the defendant, and it is acknowledged that ordinarily under Section 89 of Act 64 of 1904, the Negotiable Instrument Law, an endorser is entitled to notice of dishonor. But it is insisted (1) that the Negotiable Instrument Law is not applicable here because, the defendant endorsed the notes for only a part of the obligation and, therefore, rendered it nonnegotiable; (2) and in the alternative, that if the notes be considered negotiable, defendant has waived notice; and (3) that defendant is primarily and not secondarily liable, because at the time she endorsed the notes she knew that they would not be paid by

the maker and that, therefore, notice was unnecessary since the law does not require the doing of a vain thing.

Considering the first contention, we find that Section 32 of the Negotiable Instrument Law (Dart's Gen.St.1932, § 821) reads as follows:

"Indorsement must transfer entire instrument or residue due thereon.—

"The indorsement must be an indorsement of the entire instrument.

"An indorsement, which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue."

■ In the instant case, however, the whole amount payable was transferred to transferee and not a part only.

In Brannon's Negotiable Instrument Law, Annotated, Sixth Edition, Section 32, on page 477, there is the following note: "Where a note for the sum of $4,-100.00, payable to two payees was indorsed by both with the indorsement by one expressed to be to the extent of $1,-200.00, the note was not rendered nonnegotiable, since the indorsement was not one of a part of the instrument, but a complete transfer and merely limited the indorser's liability. Puckett v. Big Lake State Bank (Tex.Civ.App.) 73 S.W.2d 893."

■ It is conceded that notice of dishonor was waived in the case of the $2,-500 note, since such waiver appears on the face thereof, but the defense of want of notice of and consent to an extension of time is insisted upon. As to this defense plaintiff contends that it has been waived because of the legend which appears on the reverse of the note to the effect that "we, the endorsers of this note, do hereby each and severally, waive protest thereof, and agree that time of payment may be extended without notice. Signed C. V. Calamia". Following the signature of C. V. Calamia, who was the payee of the note, appears the following: "Interest paid to Jan. 11, 1931, note payable on or before Jan. 11, 1932, with 8 per cent interest from Jan. 11, 1931." And below this notation are the signatures of the endorsers, each for a fractional por-

tion of the amount of the note. The contention is that the endorsement of Virginia Stafford below the waiver of protest and notice of extension of time, relates to the waiver of notice of dishonor and of extension of the note, signed by the payee, C. V. Calamia. It is apparent, however, from the note itself, and there is evidence in the record to the same effect, that the signature of Virginia Stafford, as well as that of Messrs. Carrere, Denechaud and the others who signed with her, was affixed to the note long after the waiver signed by Calamia, who is the lone signator to it, notwithstanding the fact, that the waiver is in the plural— "we, the endorsers, etc.".

Section 110 of the Negotiable Instrument Law is to the following effect: "Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only."

There is, therefore, no waiver of notice of extension of the $2,500 note. The larger note contains no provision on its face or in its reverse relative to a waiver of notice of dishonor or of extension.

Finally, the plaintiff argues that the defendant and the others who endorsed the notes with her, were all stockholders in the Hope Realty Company, Inc., the maker of the notes, and that each and all of them knew that the Hope Realty Company would not and could not pay the notes, because of the depreciation in the value of the Mississippi property, the only asset of the corporation, citing among other authorities, Section 80 of the Negotiable Instrument Act (Dart's Gen.St.1932, § 869), which reads as follows: "When presentment not required to charge indorser.—Presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation and he has no reason to expect that the instrument will be paid if presented." And Daniel on Negotiable Instruments, 7th Edition, Volume 11, Section 1236, p. 1289, as follows: "And so the giving of notice of dishonor of a note is deemed to be excused when the circumstances show at the time the note was given and endorsed that it was not expected that the note would be paid at maturity, or that it or the obligation should be carried for an indefinite period. Thus a long and definite course of deal-

ing established a regular system of renewals under which the payees dispensed with formal notice of dishonor, and notwithstanding such omission, the same continuing endorser joined in successive renewals, shows a waiver of notice."

In the first place, the defendant was not one of the incorporators of the Hope Realty Company. She was a stockholder by reason of her inheritance of a fractional interest in her father's succession. The notes were not made for her accommodation and the evidence is to the effect that she knew nothing about the matter except what she was told by her brother, John B. Stafford, and her Uncle, Chas. I. Denechaud. The mere fact that the Hope Realty Company was not in position to pay the notes at the time she endorsed them, and that as a stockholder she might receive some benefit if the financial situation of the company should improve, does not change her status as an endorser secondarily liable into that of a co-maker primarily liable.

Under the Negotiable Instrument Act, Section 120, a person secondarily liable is discharged "by any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." See also 10 Corpus Juris Secundum, verbo, Bills and Notes, page 772, Section 284.

The case of Blanc v. Mutual National Bank, 28 La.Ann. 921, 26 Am.Rep. 119, confidently relied upon by the plaintiff, is not in point. There the endorsers had waived protest on the note and had added the words "We hold ourselves responsible for the payment of the note, which is hereby extended thirty days" and the question was, as put by the Court, "after such a waiver, was the holder bound to make demand and give notice at the expiration of the thirty days, or to obtain a second waiver in order to hold the indorsers?" It is apparent that no such proposition is involved in the instant case.

We think that the failure to give notice of dishonor and to obtain consent of the defendant to the extension of the time for the payment of the note in the one case, and the failure to obtain the consent of the defendant to the extension of the note in the other, has the effect of relieving her from responsibility as an endorser.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendant, Virginia Stafford Gardiner, dismissing plaintiff's suit at its cost.

Reversed.